[No. 11063-6-II.   Division Two.   March 14, 1989.]

ANNA FISHER, *Respondent,* v. TACOMA SCHOOL DISTRICT No. 10, *Appellant.*

*James R. Verellen* and *Kane, Vandeberg, Hartinger & Walker,* for appellant.

*Patrick W. Biggs* and *Leslie O. Stomsvik,* for respondent.

REED, J.—Tacoma School District No. 10 (School District) appeals from a judgment in favor of a former employee for damages and attorney's fees based on sexual and/or racial discrimination. Because the trial court's findings of fact do not support its conclusions of law, we reverse.

Anna Fisher, a black woman, was employed by the School District as an assistant custodian at Stadium High School (Stadium) from April 1980 through the trial of this case in early 1987. Kenneth Whitemarsh served as the chief custodian at Stadium from 1979 through the end of 1984. Whitemarsh was Fisher's supervisor but had no authority

to hire or fire employees or to make permanent work assignments.

Beginning in the summer of 1980, several incidents involving either Whitemarsh or Fisher's co-workers occurred at Stadium. In essence, although no references to either her sex or race were made at any pertinent time, Fisher believed that she was being treated harshly by Whitemarsh and that such treatment was motivated by sexual and/or racial prejudice. Consequently, in December of 1981, Fisher filed a complaint with the School District alleging that Whitemarsh and other employees had been discriminating against her.[1] As a result, Don Buck, the District's supervisor of operations, conducted an investigation and discussed the work environment at Stadium High School with Fisher and her union representative, Whitemarsh, and three co-workers, a white man, a black woman and a black man. Also, on January 11, 1982, Rindetta Stewart, the School District's affirmative action officer, met with Mr. and Mrs. Fisher to discuss her allegations. Included were Whitemarsh, Buck, and two ministers whom Mrs. Fisher invited to attend.

As a result of these efforts, the School District's officials concluded that there was no discrimination directed at Fisher based upon race or sex and that any conflicts between Fisher and Whitemarsh reflected nothing more than typical personnel and personality problems.[2] On several occasions after the January 11 meeting, Buck discussed the work environment between Whitemarsh and Fisher with each of them separately. Consistent with the District's

---

[1] Finding of fact 12 reads as follows:

"Other than the complaints raised by Mrs. Fisher, defendant received no complaints of discrimination involving Mr. Whitemarsh. There was no evidence that other female and minority employees who had worked with Mr. Whitemarsh had ever had any complaints of discrimination involving him."

[2] As will be noted later herein, the trial court subsequently agreed with the School District's decision that no racial or sexual discrimination had occurred during the period covered by Fisher's complaint.

formal policy against discrimination, a number of work-shops were conducted regarding discrimination and sexual harassment. No further action was requested of the School District; none was taken. No further complaints were lodged with the District.

Sometime between January 1982 and January 1985, an anonymous note was left on the custodians' lunchroom table at Stadium. The note stated "Discrimination is hard to prove." Fisher and a co–worker observed the note, but neither reported its discovery nor complained about its contents to anyone. Whitemarsh also observed the note and left it on the table. He did not report the incident to any-one. None of Whitemarsh's superiors at the School District was made aware of the incident until after Whitemarsh left Stadium.

Fisher filed this discrimination action on March 2, 1984. After a bench trial, the court found that while none of the conflicts between Whitemarsh and Fisher was particularly severe, under the totality of the circumstances, several of the incidents created for her a hostile work environment.[3] This finding is not challenged. The court also found that the conflicts between Whitemarsh and Fisher were not per-vasive evidence of an intent to discriminate based on race or sex. However, the court determined that the anonymous note was the key factor that, when viewed in light of the other incidents, established Whitemarsh's secret intent to discriminate against Fisher based on her race and sex.[4]

---

[3]The court also found that several other alleged incidents did not create a hostile work environment or result from discrimination.

[4]Finding of fact 7 states:

"The conflicts between Mr. Whitemarsh and Mrs. Fisher are not pervasive evidence of an intent to discriminate based upon race or sex. The key incident which, when considered with all the other incidents involving Mr. Whitemarsh and Mrs. Fisher, establishes that Mr. Whitemarsh did have an intent to discrimi-nate against Mrs. Fisher based upon race or sex, was the incident involving Mr. Whitemarsh's conduct regarding the anonymous note left in the custodian's room at Stadium High School stating that 'Discrimination is hard to prove.' The inci-dents involving Mrs. Fisher in the workplace at Stadium High School, exclusive of the anonymous note incident, do not, in and of themselves establish that there

The court therefore concluded that the hostile work environment constituted sexual and racial harassment that was unwelcome and affected the terms and conditions of Fisher's employment. RCW 49.60. In its conclusions of law, which are vigorously challenged by the District, the court imputed the harassment to the employer because the School District "knew or should have known" of the harassment and failed to take reasonably prompt and corrective action.

The court awarded Fisher damages in the amount of $22,349 and attorney's fees of $64,624. The School District appealed.

■ The School District challenges the trial court's conclusions of law that ascribe to it Whitemarsh's discriminatory acts. Because the findings of fact are not in dispute, we shall treat them as verities on appeal. *Metropolitan Park Dist. v. Griffith,* 106 Wn.2d 425, 433, 723 P.2d 1093 (1986).

■ To establish a work environment *sexual* harassment case, an employee must prove the following elements: (1) the harassment was unwelcome; (2) the harassment was because of sex; (3) the harassment affected the terms or conditions of employment; and (4) the harassment is imputed to the employer. *Glasgow v. Georgia–Pacific Corp.,* 103 Wn.2d 401, 406–07, 693 P.2d 708 (1985). We hold that this test applies to work environment *racial*

---

was an intent to discriminate against Mrs. Fisher based upon her race or sex. It is the anonymous note incident, together with the other incidents considered in light of the anonymous note incident, which establish that there was more than a personality conflict between Mrs. Fisher and Mr. Whitemarsh and that there was an intent to discriminate against Mrs. Fisher based upon her race or sex."

When proposed findings and conclusions were presented the court observed:

"Well, my impression of the situation, at least up to and through the time of this meeting in December of '81, was that, frankly, Mrs. Fisher was a hard person to work with. And she was. I think the evidence came across pretty strong that she was. At least up until then and through then I think that was the explanation of what was going on. This all occurred prior to the note incident where I found that there was more than her being hard to work with. . . . But I wouldn't be able to find any discrimination based upon that meeting; not at that time. Up to that time, she was just, frankly, hard to work with. Whether she was black or white or female or male."

discrimination as well. The only issue we are asked to address is whether Fisher has satisfied the fourth element of the *Glasgow* test, that is, whether the law requires that Whitemarsh's harassment be imputed to the School District.

The court in *Glasgow* rejected the strict liability standard for holding employers liable in work environment cases. *Glasgow*, 103 Wn.2d at 406. Following nonbinding, but persuasive, federal precedent[5] interpreting Title VII of the Civil Rights Act of 1964, the court enumerated the elements required to be proved for imputing to the employer work environment harassment committed by immediate supervisors and coemployees.

> To hold an employer responsible for the discriminatory work environment created by a plaintiff's supervisor(s) or co–worker(s), the employee must show that the employer (a) authorized, knew, or *should have known* of the harassment and (b) failed to take reasonably prompt and adequate corrective action. *This may be shown* by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the workplace as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.

(Italics ours.) *Glasgow*, 103 Wn.2d at 407. *See also Henderson v. Pennwalt Corp.*, 41 Wn. App. 547, 704 P.2d 1256 (1985). There is no finding that the District authorized any such activity or that it knew of the anonymous note. Thus, to impute liability to the District for Whitemarsh's harassment, Fisher was required to prove (a) either that the harassment was pervasive, or that she made complaints to higher managerial or supervisory personnel; and (b) that

---

[5]*See, e.g., Barrett v. Omaha Nat'l Bank*, 726 F.2d 424 (8th Cir. 1984); *Katz v. Dole*, 709 F.2d 251 (4th Cir. 1983); *Henson v. Dundee*, 682 F.2d 897 (11th Cir. 1982); *Bundy v. Jackson*, 641 F.2d 934 (D.C. Cir. 1981).

the School District failed to take adequate action to curb the harassment.

The trial court specifically found that there was no "pervasive evidence of an intent to discriminate based upon race or sex."[6] In fact, the court found that the key and only incident that somehow evidenced Whitemarsh's discriminatory intent was the discovery of the anonymous note, which came to light some time *after* the investigation was concluded.[7] The court reasoned that the School District should have drawn the same conclusion as did the court, *i.e.*, should have known of the harassment through the anonymous note, because Whitemarsh, as chief custodian, "should have removed the note and reported the incident to his superiors" but failed to do so.

We conclude that this finding is not sufficient to impute liability to the School District. Although the School District originally had notice of Fisher's problems in the work environment, after a prompt and thorough investigation and remedial action, it reasonably believed the problem was attributable to personality differences; it had no actual knowledge or notice of Whitemarsh's discriminatory intent, which finally was demonstrated for the trial court only through the anonymous note incident. Fisher's complaints had been received, investigated, and, according to the trial court's findings, properly resolved. Because Fisher failed to complain to someone in higher authority regarding events occurring after the District's response to her 1981 petition,

---

[6]While the trial court would have been well advised to adhere to the pervasive *harassment* language in *Glasgow,* the reference in this finding to a lack of pervasive *evidence* of a *discriminatory intent* is an immaterial deviation for our purposes because Fisher failed to prove either condition.

[7]Parenthetically, we fail to see how Whitemarsh's failure to remove and/or report the anonymous note in any way reflected his past discriminatory intent. The note is not only anonymous, it is at best ambiguous. In fact, assuming that the message was directed at Fisher, one reasonable interpretation is that the writer was sympathizing or commiserating with her. Whitemarsh merely failed to throw away the note and report it to his superiors. However, as the defendants chose not to challenge this finding, we accept the fact that Whitemarsh did mistreat Fisher because of her sex and race.

including the note incident, she cannot now claim that the School District "knew or should have known" about it and did not respond appropriately. To the extent "conclusion" of law 2 is a finding of fact, *cf. Glasgow,* 103 Wn.2d at 407, it is not supported by the evidence. To the extent it is a conclusion of law, it is not supported by the facts as found by the trial court.[8] Hence, we cannot conclude that the School District "knew or should have known" of the harassment.

In conclusion, the trial court erred by holding the School District liable. In view of our decision, we need not address the School District's claim that the award of attorney's fees was excessive. Accordingly, we reverse the judgment for both damages and attorney's fees.

Reversed.

ALEXANDER, C.J., and PETRICH, J., concur.

Review denied at 112 Wn.2d 1027 (1989).

---

[8]"Should have known" in this context is a conclusion drawn from other facts only when those facts are considered in light of the law of respondeat superior as it applies to work environment discrimination cases, *e.g.,* as in *Glasgow.*