**Sheila BAKER, Plaintiff,**

v.

**KAISER ALUMINUM & CHEMICAL CORPORATION, Defendant.**

**No. CS–95–0174–WFN.**

United States District Court, E.D. Washington.

Nov. 21, 1996.

Lawrence Cary Smith, Smith Law Firm, Spokane, WA, for Plaintiff.

Michael F. Nienstedt, Witherspoon Kelley Davenport & Toole, P.S., Spokane, WA, for Defendant.

## ORDER

WM. FREMMING NIELSEN, Chief Judge.

A hearing was held on Defendant Kaiser's Motion for Summary Judgment on November 15, 1996. The Plaintiff was represented by Lawrence Cary Smith; the Defendant was represented by Michael Nienstedt and William Symmes. For the reasons stated at the hearing and amplified by this Order, the Defendant's Motion for Summary Judgment is **GRANTED.**

## PROCEDURAL BACKGROUND

The Plaintiff filed suit against her employer (Kaiser Aluminum) and her union (Steelworkers of America) in Spokane Superior Court. The case was removed to federal court on May 4, 1995. The plaintiff's causes of action included: (1) sexual discrimination under Title VII, 42 U.S.C. § 2000e and R.C.W. 49.60; (2) wrongful discharge/breach of contract; (3) vicarious liability; (4) negligence; (5) outrage/infliction of emotional distress; (6) negligent retention/supervision; and (7) a violation of the Washington Consumer Protection Act, R.C.W. 19.86.

On February 9, 1996 this Court granted the Steelworkers' Motion for Summary Judgment and dismissed the Steelworkers from the case. The Court also granted in part and denied in part Kaiser's Motion for Summary Judgment. Summary judgment was granted on all of Plaintiff's claims against Kaiser except the claim of sexual discrimination under R.C.W. 49.60.

The basis of the dismissal of the Title VII claim was that the Plaintiff failed to exhaust administrative remedies. Vicarious liability was dismissed as it was not a claim but a theory of liability. The claims of wrongful discharge, negligence, outrage/infliction of emotional distress, and negligent retention/supervision were dismissed as preempted under § 301 and time barred. The consumer protection claim was dismissed not on the basis of preemption, but because the Plaintiff failed to produce evidence on two elements of the claim.

Plaintiff then moved to amend her Complaint to add a claim of handicapped discrimination under R.C.W. 49.60.180. This Court denied the motion finding the amendment would be futile because the claim was preempted by federal labor law, § 301 and time barred.

## FACTUAL BACKGROUND [1]

Sheila Baker began working at the Kaiser Trentwood Plant June 4, 1979. (π SOF 1.1,

1. The statements of fact are uncontested unless otherwise noted. Plaintiff's Statements of Fact

△ SOF 1). After her first 30 days of work, Plaintiff was a Bargaining Unit employee of the Steelworkers Union and the terms and conditions of her employment were subject to the Collective Bargaining Agreement [CBA]. (△ SOF 7). The Steelworkers are the exclusive bargaining agent for Kaiser's Bargaining Unit employees. (△ SOF 3). The CBA specifically covers all terms and conditions of employment including transfers, discipline of employees and termination. (△ SOF 58).

Article 10 of the CBA provides a mechanism for the presentation and equitable adjustment of grievances through a multi-step process ending in binding third-party arbitration. (△ SOF 59). The grievance provisions of the CBA constitute the sole procedure for the processing and settlement of any claim by an employee of an alleged violation by Kaiser of the CBA, or of any question relating to any employee's wages, hours of work or other conditions of employment. (△ SOF 60).

Article 22 of the CBA affirms Kaiser and the Union's duty to maintain a working environment free from discrimination. To carry out this duty, the CBA establishes a joint Company–Union Equal Opportunity Committee [EOC], which provides a forum within the framework of the Company–Union relations whereby both parties can discharge their affirmative commitments of equal opportunity, as well as consider complaints raised by the members of the Bargaining Unit concerning these commitments. The committee is authorized to take action concerning these matters involving equal opportunity, including filing a grievance in the third step of the grievance procedure. (△ SOF 61).

Under Article 11 of the CBA, Kaiser has the exclusive right to manage the plant and its working forces. Kaiser has the right to suspend or discharge for proper cause, or relieve workers from duty for other legitimate reasons. (△ SOF 62). The company in the exercise of its rights must observe the provisions of the CBA. In order to carry out this duty, Kaiser promulgated the Rules of Conduct, The Equal Opportunity Policy Notice, and Kaiser's Sexual Harassment Policy.

(π SOF 8.1, △ SOF 62). Under Kaiser's Rules of Conduct, any employee can be disciplined for a variety of offenses. Any employee disciplined under the Rules of Conduct may file a grievance to contest it. (△ SOF 63).

Kaiser's Sexual Harassment Policy states that offending employees will be disciplined. Victims of sexual harassment are advised to contact immediately their supervisor, department griever, a member of the EOC any member of management or any union official. The policy further provides that if inadequate action is taken after notifying one of these persons the complaining employee ought to contact Human Resources or Trentwood Vice–President of Operations. This policy is posted on Trentwood's bulletin board throughout the plant. (△ SOF 64). The policy prohibits physical, graphic, verbal or hazing of a sexual nature, and the Plaintiff complained of all four types of behavior. (π SOF 8.2). Some of the harassment consisted of gender derogatory words and was sexual in nature. (π SOF 8.4).

Trentwood's Equal Opportunity Policy Notice announces an alternate method to the grievance procedure for reporting a violation of civil rights. It states that any member of the Union who believes that their civil rights are being violated on the basis of race, sex, religion, age or national origin, should contact any one of the fifteen listed names on the notice. This policy is also posted on bulletin boards throughout the Trentwood Plant. (△ SOF 65).

In disciplining an employee under any of these policies, Kaiser has agreed to comply with Article 13 of the CBA, Discharge and Discipline. Grievances of Article 13 actions are governed by Article 10. (π SOF 8.5; △ SOF 67, 68). Kaiser may not subpoena or call as a witness in arbitration proceedings any employee from any Bargaining Unit in the plant from which the grievance arises, or any non-Bargaining Unit employee from the same plant. (π SOF 9.2; △ SOF 69). The grievance procedure may take up to one year. (△ SOF 70).

[π's SOF]; Kaiser's Statements of Fact [△'s SOF]. Additional facts underlying the Plaintiff's Complaint are found in the Court Order filed February 9, 1996 (Ct.Rec. 61).

If Kaiser desires to transfer a union employee, it must consult first with the Union and convince the Union to agree to make exceptions to the detailed seniority rules outlines in Article 9 of the CBA and Article 6 of the Supplemental Agreement. ($\triangle$ SOF 71).

In sum, Kaiser provides five channels by which an employee may complain of sexual harassment: via the grievance procedure of the CBA, Article 10; to the joint Company–Union EOC; to Trentwood management that the Rules of Conduct have been violated; under the Sexual Harassment Policy; and under the published Equal Opportunity Policy Notice. ($\triangle$ SOF 72).

One of the major areas of dispute is whether Plaintiff Baker ever made a complaint of discrimination based upon gender while she worked at Trentwood. ($\pi$ SOF 8.3; $\triangle$ SOF 73). It is not disputed that the harassment of Ms. Baker sometimes took the form of gender derogatory words or comments. Plaintiff relies on her own Affidavit and the transcription of rough notes from Ms. Oberman of the EEOC who indicates that Richard Williams from Kaiser told her that Ms. Baker had made a complaint to the EOC regarding sexual harassment. Defendant relies on a Supplemental Affidavit of Richard Williams which directly refutes Ms. Oberman's Affidavit. Mr. Williams served on the EOC and he denies that Ms. Baker ever made a complaint to the EOC. Mr. Williams further states that Ms. Baker did not complain of sexual harassment, but only retaliation and he couldn't document the retaliation. Exh. 3, to Kaiser's Reply filed November 4, 1996. In fact, Ms. Baker's deposition also states that she never went to the EOC. Exhibit 4, p. 251 to Kaiser's Reply filed November 4, 1996.

The Defendant also relies on deposition testimony of the following: (1) Robert Jones, Plaintiff's boyfriend, who stated that Sheila Baker never complained that she was being sexually harassed, that she understood that what was happening to her was in retaliation for going to the Company to complain about the ramming incident ($\triangle$ SOF 80 and 81); (2) Janet Baxter, Plaintiff's sister-in-law, who reported that the Plaintiff admitted that the motivation for the use of sexual derogatory words was in retaliation for Plaintiff going directly to management over the ramming incident and that the Union workers also resented her skills and productivity ($\triangle$ SOF 87 and 88); (3) Thomas Charles, physician assistant at Group Health Northwest, who reported that Plaintiff presented on September 8, 1993 complaining of stress-like symptoms as a result of harassment because she reported the ramming incident to management. There was no history of sex or gender harassment given ($\triangle$ SOF 92, 93 and 96); (4) Deborah Baldwin, Ph.D., a psychologist at Group Health Northwest, who indicated that the Plaintiff stated that her Union co-worker mistreatment started because she complained to management rather than the Union and at no time did she report to Dr. Baldwin an incident of harassment based on gender or sex during their 18 month contact from September, 1993 to March, 1995 ($\triangle$ SOF 98, 102 and 105); (5) John Charyk, M.D. who saw Plaintiff seven times between September 17, 1993 and May 26, 1994 and at no time during those visits did the Plaintiff ever say that the Union co-worker treatment was because she was a woman ($\triangle$ SOF 108); and (6) Sheila Baker's deposition in which she stated that she understood the co-workers perceived her as a Union traitor and that much of the harassment was by female co-workers including Jean Carlin, Kathy Sieverson, Jane Grigsby, Kerri Walters and Terri MacDonald. The harassment by women took the form of ignoring the ramming incident though it was witnessed; filing of phony safety violations; stealing of a notebook from the woman's restroom; late night threatening telephone call; threats and gender derogatory words written in the lady's bathroom on the mirror; and interference with her equipment. ($\triangle$ SOF 110, 111, 112, 113, 114, 115 and 117).

The only other disputed fact is whether the Plaintiff stated to EEOC employee, Edna Oberman, that she knew that she would have been harassed whether she was a man or a woman. ($\triangle$ SOF 120).

Mr. Robert Jones indicates there is a code among steelworkers at Kaiser Trentwood that Union members may never turn another Union sister or brother in to the Company and if they do Union co-workers will retaliate

including damaging cars and lockers or engaging in horse play or verbal harassment. (△ SOF 76, 77 and 78).

## DISCUSSION

A summary judgment motion should be granted only where "there is no genuine issue of material fact" and a party is "entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c) (West 1996). The parties clearly dispute whether the Plaintiff complained of sexual harassment, however this is not material to the issues being argued on the summary judgment motion. Kaiser argues as a matter of law that the State sexual harassment claim is preempted by § 301 of the Labor Management Relations Act [LMRA] and as such the claim is time barred. Alternatively, Defendant Kaiser argues that the Plaintiff may not bring the claim at this time because she failed to exhaust her arbitration remedy under the CBA. The questions presented are legal and the issues may be resolved on summary judgment.

 Kaiser's argument that the claim of sexual harassment is preempted may be summarized as follows: Ms. Baker claims Kaiser is liable for allowing Union co-workers to sexually harass her. Kaiser can only be liable, however, if Ms. Baker can show that Kaiser failed to take reasonable disciplinary measures to end the alleged harassment, if and when Kaiser learned of it. Whether Kaiser acted reasonably with regard to investigating and disciplining a Union co-worker for sexual harassment is inextricably intertwined with the provisions of the CBA. Therefore, Ms. Baker's harassment claim is preempted by LMRA § 301.

Plaintiff alleges that the claim is not preempted and argues as follows: The CBA between the Union and Kaiser does not govern in specific detail Kaiser's authority and ability to issue all forms of discipline. In fact, Kaiser's authority and ability to issue discipline arise from federal law, state law and the Trentwood Rules of Conduct. While the Defendant Kaiser argues its authority to enact a Sexual Harassment Policy and the Trentwood Rules of Conduct may arise from authority granted to it by the CBA, interpretation of the CBA is not necessary. The Sexual Harassment Policy and the Trentwood Rules of Conduct exist separately from the CBA, they are not a part of it or so interrelated with it that interpreting them would be interpreting the CBA.

As a preliminary matter, the Plaintiff also argues that the Defendant is estopped from raising the issue of preemption now, when the Defendant could have raised the issue at the time of the first summary judgment motion. The Court however, has no authority to bar the Defendant from raising the claim at this time.

 Turning to the issue of preemption, federal law governs suits for breach of a CBA. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). Preemption occurs whether the claims brought are based on contract or in tort. *Id.* at 210–11, 105 S.Ct. at 1910–11. Whether a state cause of action is preempted by LMRA § 301 depends on whether the resolution of the state law claims requires an interpretation of the CBA. *Lingle v. Norge Division of Magic Chef, Inc.,* 486 U.S. 399, 405–06, 108 S.Ct. 1877, 1881–82, 100 L.Ed.2d 410 (1988); *Jimeno v. Mobil Oil Corp.,* 66 F.3d 1514, 1522–23 (9th Cir.1995). A state law claim will not be preempted, however, when it is "independent" of the CBA and when the analysis of the state claim does not turn on any provision of the CBA. *Lingle,* 486 U.S. at 407, 108 S.Ct. at 1882; *Jimeno,* 66 F.3d at 1522–23; *see, also, Livadas v. Bradshaw,* 512 U.S. 107, 122, 114 S.Ct. 2068, 2078, 129 L.Ed.2d 93 (1994), *citing Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12. ("when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished").

 To assess whether state discrimination claims are independent of a CBA, the Ninth Circuit applies the following three part test:

(1) Whether the CBA contains provisions that govern the actions giving rise to the state claim, and if so (2) whether the state

has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and (3) whether the state has shown an intent not to allow its prohibitions to be altered or removed by private contact. A state law will be preempted only if the answer to the first question is 'yes,' and the answer to either the second or third is 'no.'

*Jimeno,* 66 F.3d at 1523–27, *quoting Miller v. AT & T Network Systems,* 850 F.2d 543, 548 (9th Cir.1988).

▉▉▉ 1. *Does the CBA govern the actions giving rise to the State claim?* In the State of Washington, "it is an unfair practice for any employer: ... [t]o discriminate against any person in compensation or in other terms or conditions of employment because of ... sex." R.C.W.A. 49.60.180 (1996 Supp.). A plaintiff alleging co-worker sexual harassment under Washington law must prove the following elements: (1) the harassment was unwelcome—the employee did not solicit it and the employee regarded the conduct as undesirable or offensive; (2) the harassment was because of sex—the employee was singled out and suffered the harassment because of the person's sex and the sex was the motivating factor for the unlawful discrimination; (3) the harassment affected the terms or conditions of employment—the harassment must be sufficiently pervasive to alter the conditions of employment and seriously affect the emotional or psychological well-being of the employee in question; and (4) the harassment is imputed to the employer—when co-worker harassment is alleged, the employee must show that the employer

(a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action. This may be shown by proving (a) the complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the work place as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such

nature as to have been reasonably calculated to end the harassment.

*Glasgow v. Georgia–Pacific Corp.,* 103 Wash.2d 401, 406–07, 693 P.2d 708 (1985); *Fisher v. Tacoma School Dist. # 10,* 53 Wash.App. 591, 595–96, 769 P.2d 318, *review denied,* 112 Wash.2d 1027 (1989). Interpretations of Title VII are instructive on discrimination claims under R.C.W. 49.60. *Glasgow,* 103 Wash.2d at 406, n. 2, 693 P.2d 708.

▉▉▉ The reasonableness of the employer's response to an allegation of co-worker sexual harassment depends on the circumstances of the case. Some discipline of the offending employee is required but this does not necessarily involve termination. *Ellison v. Brady,* 924 F.2d 872, 882 (9th Cir.1991); *Intlekofer v. Turnage,* 973 F.2d 773, 779 (9th Cir.1992). Plaintiff Baker is alleging co-worker sexual harassment. To succeed on her claim, she must show that Kaiser knew of the sexual harassment and failed to take reasonable action.

▉▉▉ Under the CBA, Kaiser must establish proper cause prior to disciplining any Union employee. If complaints were made under the Sexual Harassment Policy or Rules of Conduct, the discipline would still be required to comply with CBA terms, specifically Article 13 and Article 10. Moreover, the CBA does not allow Kaiser to call as witnesses in grievance procedures any Union members or non-Union members. This means that the evidence to substantiate a disciplinary action and to have it upheld in binding arbitration should the issue be grieved, must be independent of the victim or other Union members' or non-Union members' testimony. These safeguards protect Union employees from unfettered discipline measures by Kaiser. Even though state law requires Kaiser to take reasonably prompt and effective remedial measures, the CBA established by the Company and the Union establishes the measuring rod to determine the reasonableness of Kaiser's response.

Here, the Plaintiff alleges that she reported the sexual harassment to Kaiser and they did nothing. Richard Williams, a production foreman, avers that he attempted to "detect any evidence of alleged mistreatment, but

never saw or heard evidence of any." Supplemental Affidavit of Richard Williams filed November 4, 1996, ¶ 6. Mr. Williams was attempting to gain the evidence needed for disciplinary action of co-workers independent of Plaintiff's allegations. The reasonableness of this response must be measured by the fact that the CBA would not allow Kaiser to call Ms. Baker as a witness in any grievance procedure.

Plaintiff also argues that the Sexual Harassment Policy and Rules of Conduct are not part of the CBA for preemption purposes. Implicitly they argue that if these need to be consulted to determine the case, this would not result in preemption.

The Ninth Circuit has not restricted its analysis of preemption to only the CBA document. In *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1048 (9th Cir.), cert. denied, 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987), a plaintiff argued wrongful discharge in violation of an oral agreement. Plaintiff contended that the agreement was not part of the CBA and the claim was not preempted by § 301. The court held that an independent agreement could only be effective as a part of the CBA and found the claim to be preempted by § 301. *Id.; see, also, Thomas v. LTV Corp.*, 39 F.3d 611, 618 (5th Cir.1994) (individual agreement regarding probation is not independent of the CBA and is subject to the same preemption analysis as if it was the CBA). Similarly here, the Sexual Harassment Policy and Rules of Conduct are only effective as they interrelate with the CBA and therefore the Court may consider them in its preemption analysis.

In sum, as to the first element of the *Jimeno* analysis, the answer is "yes;" the CBA and its attendant documents govern the actions giving rise to the state claim of sexual discrimination.

 2. *Has the State articulated a sufficiently clear standard that the State claim can be evaluated without considering the overlapping provisions of the CBA?* Washington has articulated the elements of a claim of sexual harassment by co-workers under R.C.W. 49.60. The element of the claim imputing liability to the employer requires an assessment of whether the employer acted reasonably or was negligent. *Glasgow*, 103 Wash.2d at 407, 693 P.2d 708; *Baskerville v. Culligan Intern. Co.*, 50 F.3d 428, 432 (7th Cir.1995) (the standard for when an employer is liable for sexual harassment is negligence; the employer's duty is discharged if the employer takes reasonable steps to discover and rectify acts of sexual harassment). What is reasonable depends on surrounding circumstances such as "the seriousness of the offense, the employer's ability to stop the harassment, the likelihood that the remedy will end the harassment, and 'the remedy's ability to persuade potential harassers to refrain from unlawful conduct.' " *Intlekofer*, 973 F.2d at 779, *quoting Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir.1991). One additional circumstance to be considered under federal law is whether a grievance procedure existed and whether the Plaintiff utilized the procedure. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986); *Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 776 (6th Cir. 1996) (plaintiff's failure to avail herself of the company policy for reporting sexual harassment weighs strongly against imposing corporate liability).

The standard for imposing employer liability is thus not clear under either state or federal law, the latter of which is used to assist in interpreting R.C.W. 49.60. *Glasgow*, 103 Wash.2d at 406, n. 2, 693 P.2d 708; *Payne v. Children's Home Society of Washington, Inc.*, 77 Wash.App. 507, 512, 892 P.2d 1102, *review denied*, 127 Wash.2d 1012, 902 P.2d 164 (1995). Sexual harassment is a fast-evolving theory of liability where the federal courts provide the state courts with guidance. *See, Payne*, 77 Wash.App. at 512, n. 3, 892 P.2d 1102. Because the standard is not clear, the CBA will need to be interpreted to determine whether what Kaiser did was reasonable in light of the options available to it under the CBA. *See, Miller v. AT & T Network Systems*, 850 F.2d 543, 549 (9th Cir.1988) (where the appropriateness of the defendant's behavior is at issue, "the terms of the CBA can become relevant in evaluating whether the defendant's behavior was reasonable"); *Barron v. Safeway Stores, Inc.*, 704 F.Supp. 1555, 1564 (E.D.Wa.1988).

Thus, the answer to the second *Jimeno* factor is "no;" the State has not articulated a sufficiently clear standard of liability which can be evaluated without considering the overlapping provisions of the CBA. *Jimeno* establishes that if the answer to the first question is "yes" and the answer to either the second or third question is "no", then preemption occurs. *Jimeno,* 66 F.3d at 1523. Although it is not required, the Court will briefly assess the third factor also.

**3.** *Has the State shown an intent not to allow its prohibitions to be altered or removed by private contract?* Washington State refuses to hold employers strictly liable for co-worker sexual harassment; liability stems instead from respondeat superior. *Glasgow,* 103 Wash.2d at 407, 693 P.2d 708; *Henderson v. Pennwalt Corp.,* 41 Wash. App. 547, 550, 704 P.2d 1256 (1985). A court must assess all factors to determine whether an employer negligently failed to take proper remedial measures. *Intlekofer,* 973 F.2d at 779. Implicitly it appears that contractual agreements could alter the prohibitions under R.C.W. 49.60.

Plaintiff cites four cases for the proposition that Washington has held that the prohibitions of R.C.W. 49.60 are not to be altered by contract. *Commodore v. University Mechanical Contractors Inc.,* 120 Wash.2d 120, 839 P.2d 314 (1992); *Morales v. Westinghouse Hanford Co.,* 73 Wash.App. 367, 869 P.2d 120, *review denied,* 124 Wash.2d 1019, 881 P.2d 254 (1994); *Bruce v. Northwest Metal Prod. Co.,* 79 Wash.App. 505, 903 P.2d 506 (1995), *review denied,* 129 Wash.2d 1014, 917 P.2d 575 (1996); and *Barron v. Safeway Stores, Inc.,* 704 F.Supp. 1555 (E.D.Wa.1988).

The *Barron* case actually held the opposite of Plaintiff's proposition. The court held that Washington had not "shown an intent not to allow the definitions of what constitutes a 'reasonable accommodation' to be bargained for." *Barron,* 704 F.Supp. at 1564 (handicap discrimination).

The other cited cases are distinguishable and not persuasive. The Washington Supreme Court in *Commodore* determined that a racial discrimination claim by an employee against a supervisor was not preempted because the claim was based on an independent state law right and could have been brought in absence of the CBA. The court relied on *Lingle* and the "*Marcus*" model from a law review article. It did not apply the *Miller/Jimeno* analysis. The case is distinguishable because it involved racial discrimination by a supervisor, not gender discrimination by co-workers.

In *Morales* (1994), a Hispanic man alleged racial discrimination. Preemption was not an issue in the case, but the court observed that R.C.W. 49.60 evidenced a statutory intent to allow employees to pursue statutory rights independent of remedies under the CBA. In doing so, it relied on *Reese v. Sears, Roebuck & Co.,* 107 Wash.2d 563, 731 P.2d 497 (1987), *overruled by Phillips v. Seattle,* 111 Wash.2d 903, 766 P.2d 1099 (1989). Courts in this district have assessed that the *Reese* analysis has fallen after the Supreme Court decision *Lingle. Barron,* 704 F.Supp. at 1563. *Lingle* established that state-law claims are preempted if resolution of the claim depends upon the meaning of the CBA. *Lingle,* 486 U.S. at 413, 108 S.Ct. at 1885. *Morales* also relied on *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). The principal concern of *Alexander* was rejected in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) that arbitration is an inappropriate forum to resolve Title VII statutory rights. *Austin v. Owens–Brockway Glass Container, Inc.,* 78 F.3d 875, 880 (4th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 432, 136 L.Ed.2d 330 (1996).

The *Bruce* case dealt with a handicap discrimination claim and the court cited *Commodore* and *Morales* for the propositions that (1) a disability discrimination claim pursuant to R.C.W. 49.60 is not preempted under § 301 of the LMRA and that (2) R.C.W. 49.60 establishes an independent cause of action for discrimination that is independent of any remedy under a CBA and that the person need not first pursue a remedy under the CBA to bring the state law claim. The court in *Bruce* treated the issue summarily in a single paragraph and also relied on *Reese.* Neither *Morales* or *Bruce* applied the *Miller/Jimeno* test for preemption. The Court

concludes that Ms. Baker's cited cases are not directly on point as none address the question of preemption of a co-worker sexual harassment claim. Thus, the State has not shown an intent that its prohibitions on co-worker sexual harassment cannot be altered by private contract and the answer to the third *Jimeno* factor is "no."

Preemption of Ms. Baker's State law claim of co-worker sexual harassment must occur. Plaintiff's claim will be barred by the statute of limitations as this Court determined at an earlier summary judgment hearing on other state law claims and on Plaintiff's Motion to Amend. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 165, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983); *Harris v. Alumax Mill Prod., Inc.*, 897 F.2d 400, 403–04 (9th Cir.), *cert. denied*, 498 U.S. 835, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990) (employee must bring claim under § 301 within six months). Accordingly,

**IT IS ORDERED** that:

1. The Defendant's Motion for Summary Judgment, **Ct. Rec. 85,** is **GRANTED.**

2. The Clerk of Court shall:

(a) **ENTER JUDGMENT FOR THE DEFENDANTS;** and

(b) **CLOSE THIS FILE.**

The Clerk is directed to file this Order and provide copies to counsel.