[No. 17263-5-III.   Division Three.   January 21, 1999.]
DOUGLAS D. WARE, *Appellant*, v. MUTUAL MATERIALS
COMPANY, *Respondent*.

*Fred O. Montoya*, for appellant.

*Lucinda S. Whaley* of *Winston & Cashatt, P.S.*, for respondent.

SCHULTHEIS, C.J. — Section 301 of the federal Labor Management Relations Act preempts a worker's state claims that require interpretation of a collective bargaining agreement (CBA). After he was terminated by Mutual Materials Company in May 1995, Douglas Ware filed suit alleging handicap discrimination. The trial court granted summary judgment dismissal of Mr. Ware's claim as preempted by section 301. Mr. Ware argues on appeal that preemption is inapplicable because his claim is based on state antidiscrimination law and does not require consideration of the CBA. Mutual cross-appeals the trial court's decision that issues of material fact preclude summary judgment on the discrimination claim. Although we find that

the trial court erred in concluding the claim was preempted by section 301, we affirm dismissal as a matter of law.

FACTS

Mutual first hired Mr. Ware as a brick stacker in August 1994. About a month later, he quit to work somewhere else. Mutual hired him again as a probationary employee in January 1995. Over the next several months Mr. Ware experienced medical problems and suffered two minor heart attacks in February and April 1995. By late March he had worked only seven days at Mutual. When he returned to work March 28, he agreed to extend his probationary period 60 days from that date. Heart problems continued to plague him and he missed work intermittently in April and May. He returned to work on May 22, 1995, after a month's leave of absence.

After putting in a full day on May 22, Mr. Ware was called to the office of plant manager Bob Cole. Mr. Ware's supervisor, Dave Theis, also attended the meeting. According to Mr. Ware, the discussion was limited to his heart condition. He claims the two other men told him they would not know what to do if he had another heart attack. Mr. Theis discussed his mother's three bypass surgeries and treatment. Mr. Cole wanted Mr. Ware to guarantee 100 percent that he would not have another attack. When Mr. Ware said neither he nor anyone else could make that guarantee, Mr. Cole terminated him.

Mutual provides a different account of the May 22 meeting. According to Mutual's Director for Human Resources (HR), Mutual made a plant-wide announcement in early May 1995 (while Mr. Ware was on leave of absence) of a production slowdown effective May 26, 1995. This lower production necessitated a reduction in work force. Article X of the CBA, which covers all of Mutual's employees, indicates employees may be discharged at any time for no cause during the probationary period. The CBA also provides that layoffs during reduction periods are deter-

mined by length of continuous service. The "Employee Status Change Report" signed by Mr. Cole and Mr. Theis on May 22 states that Mr. Ware was "[t]erminated because of lack of work – still in probation period." Considering the planned reduction in work force, the HR director stated, "[i]t did not make economic sense to continue Ware as an employee only to discharge him four days later." Eleven other Mutual employees, all probationary or of low seniority, were also terminated on or around May 26, 1995.

Mr. Ware filed suit in November 1995 alleging handicap discrimination in violation of the Washington law against discrimination, RCW 49.60.180. In December 1997, Mutual moved for summary judgment on two bases: (1) Mr. Ware's claim was preempted by section 301 of the Labor Management Relations Act; and (2) he failed to present a prima facie case of handicap discrimination or to rebut Mutual's legitimate business reason for termination. On January 21, 1998, the trial court granted summary dismissal of Mr. Ware's claim as preempted by section 301. It also found, however, that issues of material fact remained regarding the elements of the discrimination claim and denied summary judgment on that basis. Mr. Ware appeals the dismissal of his claim and Mutual cross-appeals the denial of its motion for summary judgment.

SECTION 301 PREEMPTION

Mr. Ware first assigns error to the summary dismissal of his handicap discrimination claim as preempted by section 301 of the Labor Management Relations Act of 1947. *See* Labor Management Relations Act, ch. 120, § 301, 61 Stat. 156 (1947) (codified at 29 U.S.C. § 185). Because his claim is defined and enforced under state statute and is nonnegotiable, he argues, it is not preempted by federal CBA requirements.

Section 301 gives federal courts jurisdiction over lawsuits arising from CBAs. 29 U.S.C. § 185(a); *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120,

126, 839 P.2d 314 (1992). Preemption under section 301 ensures that federal law is the basis for interpreting these union agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408-09, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988). If a state law claim can be asserted without reliance on the CBA, the claim is considered "independent" and is not subject to preemption. *Lingle*, 486 U.S. at 413; *Commodore*, 120 Wn.2d at 129. Further, section 301 will not preempt claims based on state laws that grant employees nonnegotiable (not subject to waiver by private agreement), substantive rights when adjudication of those rights does not depend on a CBA. *Wilson v. City of Monroe*, 88 Wn. App. 113, 117, 943 P.2d 1134 (1997), *review denied*, 134 Wn.2d 1028 (1998).

Mr. Ware's claim of handicap discrimination arises from statute—RCW 49.60.180(2)—and therefore is nonnegotiable and independent of any CBA requirements or remedies. *Commodore*, 120 Wn.2d at 129-31; *Bruce v. Northwest Metal Prods. Co.*, 79 Wn. App. 505, 513, 903 P.2d 506 (1995), *review denied*, 129 Wn.2d 1014 (1996). *See also Morales v. Westinghouse Hanford Co.*, 73 Wn. App. 367, 371-72, 869 P.2d 120 (a claim of discrimination pursuant to RCW 49.60 is independent of any remedy provided in the CBA), *review denied*, 124 Wn.2d 1019 (1994). Accordingly, his suit is not preempted by section 301.

Mutual successfully argued to the trial court that the basis of a plaintiff's claim is not the only test for CBA preemption. Relying on language found in *Lingle*, 486 U.S. at 405-06, it contended the real test is whether the resolution of the state law claim depends on the meaning of a CBA. After an employee establishes a prima facie case of handicap discrimination, the burden shifts to the employer to present evidence that the employee was discharged for a nondiscriminatory reason. *Cluff v. CMX Corp.*, 84 Wn. App. 634, 638, 929 P.2d 1136 (1997). Mutual argued below, and here, that Mr. Ware's RCW 49.60 claim requires an examination of the CBA to determine whether Mutual had a legitimate, nondiscriminatory reason for terminating Mr.

Ware. Mutual's CBA provides the guidelines for instituting a reduction in force and for discharging probationary employees. Consequently, Mutual contends, its decision to discharge Mr. Ware does turn on the meaning of the CBA and was actually mandated by its provisions.

*Commodore* addresses the issue of CBA interpretation raised as a defense and gives it short shrift. "If an employer could eliminate a union member's right to bring a state law action simply by asserting a defense requiring CBA interpretation, employees would see unionization as a less desirable alternative." *Commodore*, 120 Wn.2d at 130 (quoting Note, *The Need for a New Approach to Federal Preemption of Union Members' State Law Claims*, 99 YALE L.J. 209, 229 (1989-1990)). When an employer raises a defense requiring interpretation of the CBA—arguable here—the state court must exercise its concurrent jurisdiction to apply federal law to this interpretation. But after evaluating the validity of the employer's defense, the court may switch to independent state law standards to resolve the employee's state law claim. *Commodore*, 120 Wn.2d at 130-31. "Even where the state law claim is not preempted but the employer's defense implicates terms of the CBA, courts of this state can apply federal law to assess the defense, thereby allowing 'doctrines of federal labor law uniformly to prevail over inconsistent local rules.'" *Id.* at 131-32 (quoting *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962)).

Mutual responds that the test adopted in *Commodore* for section 301 preemption of state discrimination claims has been superseded in recent federal cases, including *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514 (9th Cir. 1995) and *Baker v. Kaiser Aluminum & Chem. Corp.*, 951 F. Supp. 953 (E.D. Wash. 1996). *Jimeno*'s three-part test for assessing whether state claims are independent of the CBA requires determining whether: (1) the CBA contains provisions that govern the actions giving rise to the state discrimination claim; (2) the state's standard is sufficiently clear that the claim can be evaluated without considering the overlapping provi-

sions of the CBA; and (3) the state has shown an intent not to allow its prohibitions to be altered by private contract. *Jimeno*, 66 F.3d at 1523-27; *Baker*, 951 F. Supp. at 958-59. A claim based on state discrimination law will be preempted only if the answer to the first question is "yes" and the answer to either of the next two questions is "no." *Baker*, 951 F. Supp. at 959.

Even under the *Jimeno* test we find no section 301 preemption here. Mutual provided no evidence that its CBA contains provisions governing discrimination claims. *Compare Baker*, 951 F. Supp. at 959-60 (the Kaiser CBA contained extensive provisions for reporting sexual harassment and for disciplining offending employees). Because the answer to the first test question is no, we need not address the second or third.

HANDICAP DISCRIMINATION

On cross-appeal, Mutual contends the trial court erred in finding issues of material fact that preclude summary judgment dismissal of Mr. Ware's discrimination claim. Summary judgment is granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Commodore*, 120 Wn.2d at 123. The court considers the evidence in the light most favorable to the nonmoving party and grants the motion only if reasonable persons could reach but one conclusion. *Id.* We engage in the same inquiry as the trial court. *Id.*

RCW 49.60.180(2) declares it an "unfair practice" to discharge any person from employment because of physical disability. For an employee to sustain a claim of wrongful discharge on the basis of a handicap, he or she must establish (1) a handicap; (2) satisfactory performance on the job; (3) replacement by a person outside the protected group; and (4) the handicap was the reason for the discharge. *Cluff*, 84 Wn. App. at 637. The elements of a prima facie case are not so rigid, however. When there has been a reduction in work force, courts have dispensed with the

third requirement. *Id.* at 637-39. The overriding question is whether the handicap was the reason for termination. *Id.* at 638.

Contrary to Mutual's assertions, Mr. Ware provides deposition testimony supporting his allegation that he was terminated due to his physical disability. He testified his supervisors worried that they would not know how to handle a heart attack if he had one in the future. Whether or not his condition actually disabled him (and he asserts he was not slowed down by the condition then or now), his employer's perception that he was handicapped is enough to establish a handicap for wrongful discharge purposes. WAC 162-22-040; *Michelsen v. Boeing Co.*, 63 Wn. App. 917, 921 n.2, 826 P.2d 214 (1991). Nothing in the record indicates that Mr. Ware's performance on the job was anything but satisfactory. Clearly Mr. Ware established a prima facie case of wrongful discharge on the basis of a perceived handicap.

Once a prima facie case is established, the burden shifts to the employer to show a legitimate nondiscriminatory reason for the termination. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 490, 859 P.2d 26, 865 P.2d 507 (1993). If the employer fulfills this burden, the employee must in turn show that the articulated reasons are merely pretext for a discriminatory purpose. *Id.* at 491. Here, the evidence establishes that Mutual posted a notice in early May 1995 that there would be a production slowdown effective May 26. When Mr. Ware, who was still on probationary status and of low seniority, returned to work on May 22, he was terminated. Within a week or so, 11 other Mutual employees on probation or of low seniority were also discharged. Mutual sufficiently shows a legitimate reason for discharging Mr. Ware during this reduction in force period. Mr. Ware can assert only that the real reason he was terminated was his heart condition, but the facts show that he would have been discharged anyway on or around May 26.

When the record contains reasonable, competing infer-

ences why an employee was terminated, a jury should decide the case. *Cluff,* 84 Wn. App. at 640. But when the employee cannot establish that the employer's nondiscriminatory reasons for termination are false (pretext), then the employer is entitled to dismissal as a matter of law. *Kastanis,* 122 Wn.2d at 491. In the face of the uncontroverted evidence that Mr. Ware would have been terminated anyway during the reduction in force and that Mutual chose not to continue his employment for the four days remaining until the slowdown, the trial court erred in denying Mutual's motion for summary judgment dismissal of the claim. On that basis alone we affirm the judgment dismissing this action.

Affirmed.

SWEENEY and KATO, JJ., concur.

Review denied at 137 Wn.2d 1037 (1999).