[No. 18995-3-III.   Division Three.   March 27, 2001.]

BLAINE D. RHOADS, ET AL., *Petitioners*, v. EVERGREEN UTILITIES CONTRACTORS, INC., ET AL., *Defendants*, PUBLIC UTILITY DISTRICT NO. 1 OF CHELAN COUNTY, *Petitioner*, JOINT APPRENTICESHIP AND TRAINING COMMITTEE OF THE NORTHWEST LINE CONSTRUCTION INDUSTRY, ET AL., *Respondents.*

*Linda B. Clapham, Rehman H. Bashey,* and *Michael H. Runyan* (of *Lane, Powell, Spears, Lubersky, L.L.P.*); and *Wade E. Gano* (of *Thorner, Kennedy, Gano & Rowley*), for petitioners.

*Steven G. Wraith* and *Shawn M. Farrell* (of *Lee, Smart, Cook*), for respondents.

SCHULTHEIS, J. — Two apprentice electrical workers were injured while working for Evergreen Utilities Contractors, Inc. The apprentices sued several entities, including their training program, Joint Apprenticeship and Training Committee of the Northwest Line Construction Industry (JATC). On combined motions for summary judgment, the trial court dismissed the JATC and three other defendants. The injured workers and Public Utility District No. 1 of Chelan County (Chelan PUD) appeal the JATC's dismissal, contending a negligence suit against the apprenticeship committee is not preempted by the Labor Management Relations Act. Because we find that the negligence claims do not arise from the collective bargaining agreement, we agree and reverse.

## FACTS

Blaine Rhoads and Shane Hester were members of International Brotherhood of Electrical Workers (AFL-CIO) (IBEW) Local Union No. 125 and were enrolled in the

apprenticeship program run by the JATC. The JATC is an apprenticeship committee set up pursuant to a collective bargaining agreement (CBA) between several electrical unions and Northwest Line Constructors Chapter of the National Electrical Contractors Association, Inc. (representing employers). The purpose of the JATC is to provide apprenticeship classroom training and on-the-job experience.

In July 1996, the JATC assigned Mr. Rhoads and Mr. Hester to work for Evergreen, which was installing an electrical transmission line for Chelan PUD. During the week before the accident, Mr. Rhoads complained to the director of apprentice training at the JATC almost 20 times that the conditions on the job were dangerous. Mr. Hester called the director a couple of times with complaints as well. According to both men, the director promised to confront Evergreen and to get the safety violations corrected. Apparently no improvements were made.

After about a week on the job, Mr. Rhoads and Mr. Hester were severely injured when they received an electrical shock. They filed suit in September 1998 against Evergreen, Chelan PUD, Northwest Line Constructors, three IBEW unions (including their own), and the JATC. The unions and the JATC moved for summary judgment in October 1999. They requested dismissal of all claims against them, based on federal preemption under section 301 of the Labor Management Relations Act, 1947, ch. 120, 61 Stat. 136, 156 (1947) (29 U.S.C. § 185). Finding that any duties the unions or the JATC might have owed to guarantee a safe work place could be determined only by construing the CBA, the trial court concluded that section 301 preempted the claims against those entities.

Mr. Rhoads and Mr. Hester were joined by Chelan PUD in seeking discretionary review of the dismissal of the claims against the JATC. In a ruling on March 3, 2000, a commissioner of this court granted discretionary review in light of *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 839 P.2d 314 (1992), and this court's

decision in *Ware v. Mutual Materials Co.*, 93 Wn. App. 639, 970 P.2d 332, *review denied*, 137 Wn.2d 1037 (1999).

### DISCUSSION

■ The trial court granted summary judgment dismissal of the claims against JATC as preempted by section 301. We review the order of summary judgment de novo, engaging in the same inquiry as the trial court and viewing the facts in the light most favorable to the nonmoving party. *Commodore*, 120 Wn.2d at 123. Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*

■ ■ Section 301 gives federal courts jurisdiction over all suits "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The word "between" in section 301 refers to contracts, not suits. *Fowlkes v. Int'l Bhd. of Elec. Workers, Local No. 76*, 58 Wn. App. 759, 764, 795 P.2d 137 (1990) (citing *Smith v. Evening News Ass'n*, 371 U.S. 195, 83 S. Ct. 267, 9 L. Ed. 2d 246 (1962)). The CBA here was negotiated by several electrical unions and Northwest Line Constructors, an employer group. Consequently, any state law claim arising from that CBA or requiring interpretation of its terms is preempted by section 301. *Commodore*, 120 Wn.2d at 128 (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413, 108 S. Ct. 1877, 100 L. Ed. 2d 410 (1988)). Conversely, if a state statutory or common law claim is "independent" of the CBA, it is not preempted by section 301. *Swinford v. Russ Dunmire Oldsmobile, Inc.*, 82 Wn. App. 401, 409, 918 P.2d 186 (1996) (citing *Commodore*, 120 Wn.2d at 129). A claim is independent of the CBA if it can be asserted without reliance on the bargaining agreement. *Commodore*, 120 Wn.2d at 129.

■ Mr. Rhoads and Mr. Hester sued the JATC for common law negligence. The elements of negligence are (1) duty to the plaintiff, (2) breach of that duty, and (3) injury proximately caused by that breach. *Hertog v. City of Seattle*,

138 Wn.2d 265, 275, 979 P.2d 400 (1999). Mr. Rhoads and Mr. Hester allege that the JATC owed them a duty to provide a safe workplace. They base this duty on the director's promises to investigate and remedy the safety violations and on federal and state regulations.

Although the JATC asserts that the trial court must review and interpret the CBA to determine the JATC's duties and obligations, it cites no provision in the CBA that covers such duties and obligations. *See Commodore*, 120 Wn.2d at 136 (the defendants cite to no specific terms of the CBA that would require interpretation in order to resolve any element of the tort of outrage). The CBA contains a section entitled "Outside Area Training Agreement" that establishes the JATC and gives it responsibility for all apprenticeship and training. Clerk's Papers (CP) at 293. Various articles in the Outside Area Training Agreement establish how members of the JATC are selected, establish how apprentices are employed and paid, and provide that the JATC must make standards that conform with the national apprenticeship standards for the electrical industry. No safety or training standards are actually set out in the CBA.

At any rate, Mr. Rhoads and Mr. Hester do not claim a breach of duty established by the CBA. They contend the JATC breached a duty of care established by the National Apprenticeship Act (29 U.S.C. § 50) in 29 C.F.R. § 29.5, and by the Standards of Apprenticeship approved by the Washington State Apprenticeship and Training Council. Section 29 of the Code of Federal Regulations provides that in order to register with an agency, an apprenticeship program must conform to certain standards, including provisions for adequate and safe equipment and facilities for training and supervision. 29 C.F.R. § 29.5(b)(9). Washington State's Standards of Apprenticeship were adopted by the JATC in 1992 and provide, among other things, that the apprenticeship program must "[d]etermine the adequacy of an employer to furnish proper on-the-job training." CP at 427. Violation of a legislative enactment or regulation may be

considered evidence of negligence, and may establish a duty and breach. RCW 5.40.050; *Morinaga v. Vue*, 85 Wn. App. 822, 832, 935 P.2d 637 (1997).

Whether or not these federal and state regulations and standards establish a duty to Mr. Rhoads and Mr. Hester, the fact remains that their claims are based on duties arising from these sources and from assurances made by the director of the JATC, not from terms of the CBA. Because the claims sound in tort, arise from state common law, and do not require reference to or interpretation of the terms of the CBA, they are not preempted under section 301. *Commodore*, 120 Wn.2d at 130-31. Even if the JATC asserts a defense that requires interpretation of the CBA, the trial court will exercise its concurrent jurisdiction to apply federal law to that issue. *Ware*, 93 Wn. App. at 645. The trial court erred as a matter of law in granting summary dismissal of the claims against the JATC on the basis of federal preemption.

■ The JATC alternatively argues that Mr. Rhoads and Mr. Hester are limited to a claim for a breach of fair representation, citing *United Steelworkers of America v. Rawson*, 495 U.S. 362, 371-72, 110 S. Ct. 1904, 109 L. Ed. 2d 362 (1990). A labor union, as the exclusive bargaining representative, owes a duty of fair representation to its members. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44, 119 S. Ct. 292, 142 L. Ed. 2d 242 (1998). The JATC is not the exclusive bargaining unit for its apprentices and cannot be considered a labor union. Consequently, the claim of breach of fair representation, and its attendant six-month statute of limitations, does not apply to the facts of this case. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983).

Reversed.

Kurtz, C.J., concurs.

Sweeney, J. (dissenting) — The question before the court, for me, is whether the tort claim here is "sufficiently

independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301." *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 369, 110 S. Ct. 1904, 109 L. Ed. 2d 362 (1990). The regulations discussed in the majority opinion (those established by the National Apprenticeship Act (29 U.S.C. § 50) and the Standards of Apprenticeship approved by the Washington State Apprenticeship and Training Council) set the standard of conduct for negligence if, but only if, the collective bargaining agreement (CBA) permits or imposes a duty on the Joint Apprenticeship and Training Committee of the Northwest Line Construction Industry (JATC) in the first place. And only the CBA establishing the JATC can speak to whether such a duty exists.

This is a suit by apprentice union electrical workers against an entity created by a labor contract.

The JATC is a product of a CBA negotiated by several northwest electrical unions and the Northwest Line Constructors Chapter of the National Electrical Contractors Association, Inc. (an employer group). It has no existence independent of the relationship between the unions and the contractors. Its obligations and liabilities, in fact its very authority to assume any obligations and liabilities, arise only from the document responsible then for its existence—the CBA.

Turning to that document, the CBA provides in relevant part that

Section 1. There shall be a Joint Apprenticeship and Training Committee . . . . This Committee shall make area standards in conformity with the National Apprenticeship and Training Standards for the Outside Electrical Contracting Industry governing the selection, qualifications, education, and training of all Outside Apprentices.

Clerk's Papers (CP) at 294.

The JATC was also charged, again by the CBA, for supervision:

Section 3. The Committee shall supervise all matters involving apprenticeship and training in conformity with the provisions of this Agreement and the registered Area Apprenticeship Standards.

CP at 295.

For me, it puts the cart before the horse to begin the discussion of the JATC's liability in tort with the extrinsic safety standards themselves. It is not these standards in and of themselves that permit the imposition of some obligation on the JATC. It is the CBA. So then to evaluate the obligation of this joint management and labor committee, it is necessary to read and interpret the CBA.

I am unable to distinguish the majority holding in *Rawson*. There, pursuant to a collective bargaining agreement, management and labor formed a "joint management-labor safety committee." The allegations were that the safety committee failed in its obligations to union workers and as a result they died in a disastrous mine fire. *Rawson*, 495 U.S. at 365. The Court noted from the safety committee's response to interrogatories that

"by the contract language" of the collective-bargaining agreement, the Union had caused the establishment of the joint safety committee with purported influence on mine safety issues, and that members of the safety committee had failed reasonably to perform inspections of the mine or to uncover obvious and discoverable deficiencies in the mine safety program.

*Rawson*, 495 U.S. at 370. It then went on to conclude that "[t]he only possible interpretation of these pleadings, we believe, is that the duty on which [the workers] relied as the basis of their tort suit was one allegedly assumed by the Union in the collective-bargaining agreement." *Id*. The parallels with the facts here are inescapable. The argument advanced against federal preemption is precisely the same, i.e., that the existence of a duty in tort can be determined without reference to the CBA.

As the *Rawson* Court asked, so we ask, would the JATC

have had any obligation to the plaintiffs under some general duty of reasonable care? *Rawson*, 495 U.S. at 370. And the answer here, as in *Rawson*, is clearly it would not. These parties are not unrelated strangers. Their relationship is created by the requirements of the CBA.

The fact that the parties refer to no specific terms of the CBA for any duties makes the point. The JATC may have no authority to assume any, or it may have none; or, as the plaintiffs suggest, it may be obligated or authorized to provide for the safety of the apprentices.

Accordingly, whether the JATC had any obligation to these plaintiffs in tort rises and falls on the CBA. And necessarily, then, whether the parties intended that it assume the obligation for the safety of these workers also does. We do not, or at least we should not, reach the question of whether the duty was breached until this threshold question is resolved. That threshold question encompasses the nature of the entity created by the CBA, specifically the JATC, and what duties it was capable of assuming. We must look to the CBA to determine whether the JATC had to comply with the National Apprenticeship Act or any other federal or state statute or regulation directed to the health, safety, or welfare of these apprentice employees.

I would affirm the trial judge's dismissal of this complaint.