[No. 12655-2-III.   Division Three.   March 24, 1994.]

HELEN COVILLE, *Appellant*, v. COBARC SERVICES, INC., *Respondent*.

---

[5]Br. of Appellant, at 16.

434

*Douglas D. Peters, Robert E. Lawrence-Berrey,* and *Peters & Fowler, Inc., P.S.,* for appellant.

*Thomas D. Dinwiddie,* for respondent.

SCHULTHEIS, J. — Helen Coville appeals the orders, directing a verdict and denying her motion for reconsideration, which dismissed her claims for sexual harassment and retaliation. She contends there was sufficient evidence to take these claims to the jury. We affirm.

Mrs. Coville worked for Cobarc Services, Inc., as a janitor at the federal courthouse in Yakima, Washington. Cobarc provided janitorial services to the federal courthouse under contract and supervision of the General Services Administration (GSA). She was part of a 3-member janitorial crew which included her project manager (William Leiferman) and a co-worker (Teri Williams). Mrs. Coville had worked on the courthouse janitorial crew for 3 years, uniformly received very favorable performance reviews, and was appointed to act as the temporary project manager when Mr. Leiferman was absent.

In a corner of the courthouse basement was a small, locked room housing the courthouse's electrical and telephone circuitry. It was a high security area with limited access. Mrs. Coville had entered that room only twice during her 3 years on the job: once in an initial tour of the building, and once when Mr. Leiferman showed her how to

correct elevator malfunctions by flipping the switches which controlled the elevators.

At 2:30 p.m. on April 24, 1990, Mrs. Coville was cleaning the third floor of the courthouse when a court security officer told her the elevators were malfunctioning again and needed to be fixed. Mrs. Coville told the security officer to find Mr. Leiferman, as she was too busy. He was unable to find Mr. Leiferman.

As a result, Mrs. Coville and Ms. Williams went to the basement room to flip the elevator switches. Mrs. Coville unlocked the door, opened it, turned on the lights, and discovered Mr. Leiferman masturbating at a table. Horrified, she immediately backed out of the room, went upstairs, and vomited.

She reported Mr. Leiferman's conduct to Frank Blackburn, the GSA representative who supervised the janitorial work at the courthouse. Subsequently, Cobarc called Mrs. Coville to ask about the incident. At 5 p.m., she returned Cobarc's call, discussed the incident with Cobarc president Cornelius Hall, and received Mr. Hall's assurance that her best interests would be kept in mind.

The next day, Mrs. Coville spoke with Mr. Hall again. His position had changed; he said Cobarc would take no action against Mr. Leiferman but would take action against her if she did not report to work at her scheduled time. She said she had a horrible mental image of what Mr. Leiferman had been doing and could not work for a man she had seen like that. By April 27, GSA had asked Cobarc to fire Mr. Leiferman. Cobarc allowed Mr. Leiferman to resign effective April 30.

Mrs. Coville suffered severe stress after the incident. On April 26, 1990, she was treated by her family doctor. Several other doctors gave her medical excuses to miss work indefinitely until she recovered. She was unable to eat or sleep normally and once, while on the telephone with Cobarc, she fainted and had to be taken to the hospital by ambulance.

Mrs. Coville's doctor released her to return to work on May 10, 1990. Through her attorney, she asked Cobarc to allow her to return to work without reprimand or loss of opportunity to

fill in as temporary project manager. On May 17, Cobarc's attorney stated that Mrs. Coville's job had always remained open, but she would be reprimanded for failing to keep the matter in-house. Cobarc denied knowledge of any formal assistant manager position, but it stated that in the absence of the project manager, Ms. Williams would be appointed to act in Mr. Leiferman's stead. Ms. Williams' appointment departed from prior practice, as Mrs. Coville was normally appointed to act in Mr. Leiferman's stead when he was absent.

Rather than accept the reprimand and loss of appointment as "temporary" project manager, Mrs. Coville refused to return to work. She returned her keys to Mr. Blackburn on May 22, 1990, and filed an unemployment claim the next day. On June 7, Cobarc's attorney notified her that, due to her unexplained absence, it had no option but to assume she had resigned. Cobarc thereafter secured a permanent replacement.

Mrs. Coville filed suit against Cobarc for sexual harassment and retaliation. The matter proceeded to a jury trial on June 22, 1992. At the close of Mrs. Coville's case, the trial court orally granted Cobarc's motion to direct a verdict against the sexual harassment and retaliation claims. A formal order directing verdict was filed on August 14, and the court denied Mrs. Coville's motion for reconsideration by order filed the same day. This appeal followed.

Mrs. Coville first contends the court erroneously directed a verdict in favor of Cobarc on her claim for hostile environment sexual harassment, as her evidence was sufficient to submit this claim to the jury.

■ The rule for appellate review of an order directing a verdict is set forth as follows:

(1) evidence must be considered in favor of the nonmoving party; (2) no discretion is involved; and (3) the directed verdict will be upheld where there is no competent evidence, nor reasonable inferences arising therefrom, which would sustain a jury verdict in favor of the nonmoving party.

*Oliver v. Pacific Northwest Bell Tel. Co.*, 106 Wn.2d 675, 678, 724 P.2d 1003 (1986).

■ Creation of a hostile work environment by sexual harassment is a form of sex discrimination; as such, it is actionable under Washington's Law Against Discrimination, RCW 49.60. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985); *Henderson v. Pennwalt Corp.*, 41 Wn. App. 547, 549, 704 P.2d 1256 (1985).

■ To establish a work environment sexual harassment case, a plaintiff employee must prove the existence of the following elements: (1) the harassment was unwelcome; (2) the harassment was because of sex; (3) the harassment affected the terms or conditions of employment; and (4) the harassment is imputed to the employer. *Glasgow*, at 406-07; *Delahunty v. Cahoon*, 66 Wn. App. 829, 835-36, 832 P.2d 1378 (1992); *Fisher v. Tacoma Sch. Dist. 10*, 53 Wn. App. 591, 595, 769 P.2d 318, *review denied*, 112 Wn.2d 1027 (1989); *Henderson*, at 549.

■ With respect to the second element, the gender-causal link, the question to be answered is:

> [W]ould the employee have been singled out and caused to suffer the harassment if the employee had been of a different sex? This statutory criterion *requires* that *the gender of the plaintiff-employee be the motivating factor* for the unlawful discrimination.

(Italics ours.) *Glasgow*, at 406.

Mrs. Coville has failed to present any competent evidence or reasonable inference that her gender was the motivating factor for Mr. Leiferman's conduct. The evidence produced at trial was that Mr. Leiferman's conduct occurred behind a locked door in the basement. There is no indication Mrs. Coville was singled out to witness his conduct; rather, the only reasonable inference from the evidence is that Mr. Leiferman intended to avoid directing his conduct toward anyone else at all. Mrs. Coville's appearance on the scene came as a complete and unforeseeable surprise to all concerned.

As Mrs. Coville has failed to present any competent evidence or reasonable inference that her gender was the moti-

vating factor for Mr. Leiferman's conduct, the court properly directed a verdict against her claim for hostile environment sexual harassment.

Mrs. Coville next contends that the court erred in directing a verdict in favor of Cobarc on her claim for retaliation. Again the question is whether, when viewed in Mrs. Coville's favor, there was competent evidence or a reasonable inference from the evidence which would sustain a jury verdict in her favor. *Oliver*, at 678.

RCW 49.60.210(1) provides in relevant part:

> It is an unfair practice for any employer . . . to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge . . . in any proceeding under this chapter.

■ To establish a prima facie case of retaliation, the plaintiff must prove: (1) he or she engaged in statutorily protected opposition activity; (2) an adverse employment action was taken; and (3) a causal link between the former and the latter. *Delahunty*, at 839.

■ To determine whether an employee was engaged in protected opposition activity, the court must balance the setting in which the activity arose and the interests and motives of the employer and employee. *Delahunty*, at 840; *Selberg v. United Pac. Ins. Co.*, 45 Wn. App. 469, 472, 726 P.2d 468, *review denied*, 107 Wn.2d 1017 (1986).

■ Opposition to an employer's possible discrimination does not enjoy absolute protection or immunity; an employee may still be discharged for cause. *Selberg*, at 472; *Kinney v. Bauch*, 23 Wn. App. 88, 96, 596 P.2d 1074, *review denied*, 92 Wn.2d 1032 (1979). If the employee's protest so interferes with job performance that he or she is rendered ineffectual in his or her employed position, the conduct is not protected. *Selberg*, at 472. However, mere proof that the opposition activity is "disloyal" to the employer is insufficient by itself to prove a legitimate reason for discharge. *Selberg*, at 473.

Even viewed in a light most favorable to Mrs. Coville, the evidence in this case was not sufficient to sustain a jury verdict that she was engaged in *protected* opposition activity. Admittedly, there is evidence that Mrs. Coville refused to return to work because she opposed Cobarc's handling of the basement room incident.[1] However, the statute requires, additionally, that the opposition *must* be directed toward "practices forbidden by this chapter . . .".[2] RCW 49.60.210(1). Only opposition directed toward such practices is protected.

As discussed above, there is no competent evidence or reasonable inference that Mr. Leiferman's activity in the basement room was a practice forbidden by the Law Against Discrimination, RCW 49.60.[3] Hence, Mrs. Coville's opposition to his conduct was not protected opposition activity. She failed to produce a prima facie case; therefore, the court did not err in directing a verdict against her retaliation claim.

Mrs. Coville next contends that she presented sufficient evidence to sustain a jury verdict on her claim for constructive discharge, which she has raised in connection with her retaliation claim.

█ Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable, thereby forcing the employee to resign. *Binkley v. Tacoma*, 114 Wn.2d 373, 388, 787 P.2d 1366 (1990); *Bulaich v. AT&T Information Sys.*, 113 Wn.2d 254, 260, 778 P.2d 1031 (1989); *Micone v. Steilacoom Civil Serv. Comm'n*, 44 Wn. App. 636, 643, 722 P.2d 1369, *review denied*, 107 Wn.2d 1010 (1986). The word "deliberately" requires a deliberate act of the

---

[1]Most of her evidence indicates she did not return to work due to doctor's orders. However, once the doctor released her to return to work, she refused to return until assured that she would not be reprimanded and would receive back pay.

[2]The statute also protects those who have "filed a charge, testified, or assisted in any proceeding under this chapter." RCW 49.60.210(1). Mrs. Coville neither alleged nor offered any evidence that she filed a charge, testified, or assisted in a proceeding.

[3]This is not to say that Mr. Leiferman's conduct was acceptable; however, it was not a form of sex discrimination under the circumstances alleged.

employer in creating the intolerable condition. *Bulaich*, at 261.

In this case, the intolerable act Mrs. Coville complains of is Mr. Leiferman's masturbation in the basement room. There is no competent evidence or reasonable inference that Cobarc performed any deliberate act in creating this condition. There is no reasonable inference that Mr. Leiferman deliberately acted to create a condition under which Mrs. Coville would discover his conduct. In fact, he took considerable precautions in going down to a locked basement room rarely used by anyone else. The court did not err in directing a verdict against this claim.

Finally, both parties contend that they are entitled to attorney fees on appeal. Mrs. Coville requests a fee award in the event she prevails on appeal. Cobarc requests a fee award because Mrs. Coville's appeal is frivolous. We deny both requests.

Mrs. Coville is not entitled to a fee award, as she has not prevailed on appeal. Cobarc is not entitled to a fee award because the appeal is not frivolous. An appeal is frivolous only if "no debatable issues are presented upon which reasonable minds might differ . . .". *Harrington v. Pailthorp*, 67 Wn. App. 901, 913, 841 P.2d 1258 (1992) (quoting *In re Marriage of Greenlee*, 65 Wn. App. 703, 710, 829 P.2d 1120 (1992)), *review denied*, 121 Wn.2d 1018 (1993). Although the trial court decided a directed verdict was proper, and although we have ultimately decided to affirm the directed verdict, that does not mean the *granting* of the directed verdict was not a debatable issue. It was.

We affirm.

THOMPSON, C.J., and MUNSON, J., concur.