[No. 36934-2-I.   Division One.   February 18, 1997.]

JOHN DOE,[†] *Appellant*, v. THE DEPARTMENT OF TRANSPORTATION, *Respondent*.

---

[†]Because of the nature of the allegations in this case, we are not using appellant's real name.

*Thomas M. Geisness* and *Marlynn Bachmeyer*, for appellant.

*Christine O. Gregoire, Attorney General,* and *D. Thomas Wendel, Assistant,* for respondent.

AGID, J. — John Doe, formerly an oiler on a Washington State ferry, appeals the trial court's order granting summary judgment to the State of Washington, Department of Transportation (WSDOT), on his claims for sexual harassment under RCW 49.60, negligence under the Jones Act, and unseaworthiness under maritime common law. He also appeals from the trial court's order denying his request for attorney fees under his claim for maintenance and cure. We affirm.

## FACTS

Doe began working for the Washington State Ferries (WSF) as an oiler in 1973. From September 1990 to September 14, 1992, he was assigned to a single ferry vessel on which the events giving rise to this action occurred. Throughout this period, his supervisor frequently engaged in vulgar and disgusting behavior with strong sexual overtones, much of it directed at Doe. For example, the supervisor held objects such as bananas, zucchini and sausages between his legs and asked Doe if he "wanted it," gave him two zucchini and told him his girlfriend could use them when she was with him, and shoved a banana in Doe's pocket and said, "I got something for you." The supervisor also made derogatory remarks about women and others, deliberately mispronounced supervisors' names in an offensive manner, spoke of using guns to harm others and brought guns aboard the vessel, and belched and passed gas while Doe and others were eating.

In August 1992, Doe complained about his supervisor's

conduct to WSF officials, who immediately placed the supervisor on administrative leave and launched an internal investigation. As a result of the investigation, the supervisor was disciplined for violating WSF regulations, including his constant use of profanities, vulgarities and inappropriate sexual references, bringing guns on board the vessel, allowing a pornographic movie to be viewed on watch, and pulling up deck plates while oilers Doe and a coworker were changing lube oil filters on the main engines.

In September 1992, Doe consulted his regular physician about symptoms including anxiety and sleeplessness. The doctor referred Doe to a psychiatrist, who recommended temporary medical leave and declared Doe unfit for duty. Doe was on medical leave from September 23, 1992, to July 26, 1993. During this time, the psychiatrist continued to treat him for depression. Doe submitted a claim for maintenance and cure in January 1993, and filed a statutory claim for damages against WSF in May 1993.

In August 1993, Doe filed this action asserting claims for sexual harassment, negligence, unseaworthiness and maintenance and cure.[1] Both parties moved for summary judgment on some or all of Doe's claims. On January 6, 1995, the trial court dismissed Doe's claims for sexual harassment, negligence, and unseaworthiness. His maintenance and cure claim was tried to the bench in February 1995. The court awarded Doe $10,113.36 maintenance and cure. It denied his request for an award of attorney fees, finding that WSF's failure to pay maintenance and cure was not arbitrary, willful, or recalcitrant. Doe appeals.

### DISCUSSION

Summary Judgment Standard

In reviewing a summary judgment order, the

---

[1] RCW 47.60.210 permits seamen to sue the State for injuries occurring on WSDOT vessels under the provisions of the Jones Act, 46 U.S.C. § 688.

reviewing court engages in the same inquiry as the trial court, construing facts and reasonable inferences from them in the light most favorable to the nonmoving party. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). The trial court should grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Mountain Park*, 125 Wn.2d at 341. A material fact is one upon which the outcome of the litigation depends. *Eriks v. Denver*, 118 Wn.2d 451, 456, 824 P.2d 1207 (1992). When reasonable minds can reach but one conclusion, questions of fact may be determined as a matter of law. *Ruff v. King County*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995). More than mere possibility or speculation is required to successfully oppose summary judgment. *Pelton v. Tri-State Mem'l Hosp., Inc.*, 66 Wn. App. 350, 355, 831 P.2d 1147 (1992).

The moving party bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party is a defendant and meets this initial showing, the inquiry shifts to the plaintiff. If, at this point, the plaintiff " 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial', " the trial court should grant the motion. *Young*, 112 Wn.2d at 225 (quoting *Celotex Corp. v. Catrett*, 477 U. S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). We review questions of law de novo. *Mountain Park*, 125 Wn.2d at 341.

## Sexual Harassment Claim

Doe first challenges the trial court's summary dismissal of his claim for sexual harassment under RCW 49.60. RCW 49.60.180(3) provides in pertinent part:

> It is an unfair practice for any employer . . . [t]o discriminate against any person in compensation or in other terms or

conditions of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability . . .

WSDOT argues that summary judgment was proper because Doe cannot establish an element essential to his claim, i.e., that the harassment occurred "because of [his] sex."

■■ Sexual harassment as a working condition creates a barrier to sexual equality in the workplace and is a form of discrimination under the statute. *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985); *Thompson v. Berta Enters., Inc.*, 72 Wn. App. 531, 535-36, 864 P.2d 983, *review denied*, 124 Wn.2d 1028 (1994). To establish this claim against an employer, an employee must first identify and prove the offensive conduct. *Schonauer v. DCR Entertainment, Inc.*, 79 Wn. App. 808, 820, 905 P.2d 392 (1995) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 61, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)), *review denied*, 129 Wn.2d 1014 (1996). The employee must then establish that: (1) the harassment was unwelcome; (2) was based on his or her sex; (3) affected the terms or conditions of employment; and (4) can be imputed to the employer.[2] *Glasgow*, 103 Wn.2d at 406-07; *Schonauer*, 79 Wn. App. at 820-21.

■ Sexual harassment occurs "because of sex" under RCW 49.60.180(3) if the employee would not have been " 'singled out and caused to suffer the harassment if the employee had been of a different sex,' " i.e., if the sex of the person subjected to the harassment motivated the harassing conduct. *Payne v. Children's Home Soc'y of*

[2]This requires that the employee show that the employer "(a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action." *Glasgow*, 103 Wn.2d at 407. The employee can show this by proving that complaints were made to the employer's higher managerial or supervisory personnel or by proving the sexual harassment was sufficiently pervasive to create an inference that the employer had actual or constructive knowledge of it. In either event, the employee must also show that the employer's remedial action was not reasonably calculated to end the harassment. *Glasgow*, 103 Wn.2d at 407.

*Washington, Inc.*, 77 Wn. App. 507, 514, 892 P.2d 1102 (quoting *Glasgow*, 103 Wn.2d at 406), *review denied*, 127 Wn.2d 1012 (1995); *Coville v. Cobarc Servs., Inc.*, 73 Wn. App. 433, 438, 869 P.2d 1103 (1994). The term "sex" as used in the statute refers to the status of being male or female. *See* WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 2081 (1969) ("sex" refers to one of the two divisions into which human and other organic beings are grouped based on whether they are male or female).[3] That the Legislature intended the word "sex" to mean a classification rather than activity of a sexual nature generally is apparent from its placement in a list of other classifications according to which human beings can be characterized, e.g., age, race, color, creed, marital status, and national origin. *Cf. Marquis v. City of Spokane*, 130 Wn.2d 97, 106, 922 P.2d 43 (1996) (sex, marital status, age and disabilities were all added as unlawful bases for discrimination at the same time). The statute does not, as Doe contends, proscribe all behavior "which uses gender or sex as a weapon," but only behavior that occurs "because of" the sex of the individual toward whom it is directed.

The burden is on the plaintiff to produce competent evidence that supports a reasonable inference that his sex was the motivating factor for the harassing conduct. *See Coville*, 73 Wn. App. at 438. Although we certainly agree that the supervisor's conduct was reprehensible, Doe has not met his burden to establish that it occurred because of his sex, i.e., that he would not have been singled out and to suffer the harassment if he were of a different sex. *See Payne*, 77 Wn. App. at 514. Rather, as Doe himself concedes, the record reflects that the supervisor singled out those who appeared to be particularly offended by his conduct regardless of the victims' sex. The record thus supports an inference that Doe was singled out not because

---

[3]We have not used the word "gender" in this context because it refers to grammatical classifications into which nouns and pronouns, not organic beings, are divided. *See* WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 944 (1969).

of his sex[4] but because of his sensitivity to his supervisor's conduct. That conduct, reprehensible as it was, does not fall within the purview of RCW 49.60.180(3). The trial court properly granted summary judgment in favor of WSDOT on Doe's claim for sexual harassment.

The remainder of this opinion has no precedential value. Therefore, it will not be published but has been filed for public record. *See* RCW 2.06.040; CAR 14.

BAKER, C.J., and KENNEDY, J., concur.

Review denied at 132 Wn.2d 1012 (1997).

---

[4]Doe's argument that he was singled out because of his sex because no women employees were treated the same way also fails because no women were employed in the same work unit. Thus, there were no women to whom the supervisor could have directed the same kind of harassment. Moreover, the record reflects that the supervisor's treatment of women outside Doe's work unit was every bit as offensive as his treatment of Doe.