[No. 17528-6-III.   Division Three.   January 18, 2000.]

BRENDA SANGSTER, *Appellant*, v. ALBERTSON'S, INC., ET AL., *Respondents*.

*Robert F. Greer II* of *Feltman, Gebhardt, Eymann & Jones, P.S.* (*Darrel W. Aherin,* of counsel), for appellant.

*Peter M. Anderson* of *Bogle & Gates, P.L.L.C.*; and *Scott C. Broyles*, for respondents.

KURTZ, C.J. — Brenda Sangster filed a sexual harassment suit against Albertson's, Inc., and Terry Myers, director of the Clarkston Albertson's, based on alleged comments and actions by Mr. Myers. The superior court granted Albert-

son's and Mr. Myers' motion for summary judgment. The court reasoned that while all of the conduct about which Ms. Sangster complained was offensive and some of it even sexual harassment, it was not sufficiently pervasive so as to alter the conditions of her employment and create an abusive working environment. We disagree. If viewed in a light most favorable to Ms. Sangster, the evidence was sufficient to sustain a claim of sexual harassment under RCW 49.60.180. Reverse and remand.

## FACTS

In 1989, Brenda Sangster started working in the service deli department of the Albertson's store in Lewiston, Idaho. In December 1992, she was promoted to service deli manager in the Clarkston Albertson's store. Approximately two and one-half years later, she resigned her position at the Clarkston store and returned to a nonmanager position at the Lewiston Albertson's.

During Ms. Sangster's tenure as deli manager at the Clarkston Albertson's, the store director was Terry Myers. Ms. Sangster claims that while she was an employee at the Clarkston Albertson's store, she was the victim of Mr. Myers' sexual harassment. In October 1996, she filed a sexual harassment action against Albertson's and Mr. Myers.

The type of conduct about which Ms. Sangster complains is summarized as follows:

A. Ms. Sangster was constantly referred to as "honey," "sweety," and "little girl" by Mr. Myers.

B. Mr. Myers made sexually suggestive and demeaning comments to Ms. Sangster regarding shorts. Regarding this incident, Ms. Sangster asked Mr. Myers if it was possible for the deli department employees to wear shorts at the outdoor Albertson's store promotions. Mr. Myers told Ms. Sangster that this was okay if she bought or wore a size too small for her.

C. Ms. Sangster was present at a managers' meeting concern-

ing Vicki Fuson as employee of the month. At the meeting, Mr. Myers nominated Ms. Fuson as the employee of the month since she looked great in a bathing suit and made a gesture regarding Ms. Fuson's breasts.

D.   There were numerous statements and comments by Mr. Myers to Ms. Sangster in which he stated to Ms. Sangster, "What's the matter—didn't you get any last night?" This particular comment was not limited to one incident but was repeatedly made by Mr. Myers to Ms. Sangster in the presence of co-workers and at the Thursday managers' meeting in front of other department managers.

E.   On one occasion, a friend dropped a dress off at the store for Ms. Sangster. Mr. Myers, in the presence of other employees, asked Ms. Sangster to try the dress on in front of them.

F.   Mr. Myers made the statement to Ms. Sangster in the service deli department while looking at a display, "Damn that makes my titties hard."

G.   At one of the managers' meetings, Mr. Myers made the comment regarding hot mustard, "Try it, it will make your pecker stand out."

H.   Mr. Myers made a comment regarding Ms. Sangster's flying lessons. He remarked that she should join his mile high club. When she asked what that was, Mr. Myers turned and walked away laughing. Ms. Sangster felt that this comment was of a sexual nature and carried sexual overtones.

I.   Mr. Myers made comments about the problem with dating younger men. He stated that Ms. Sangster should go out with older men like himself. In this same conversation, Mr. Myers commented to Ms. Sangster that she should travel with him.

J.   Mr. Myers made other vulgar and demeaning sexual comments to Ms. Sangster at the weekly managers' meetings.

K.   Mr. Myers stated that he noticed Ms. Sangster's performance as service deli manager began to slip the four to six months before she left the Clarkston store in July 1995.

Albertson's and Mr. Myers filed a motion for summary judgment. The court found that these actions did not rise to the level of sexual harassment and, accordingly, granted Albertson's and Mr. Myers' motion for summary judgment.

Ms. Sangster filed a motion for reconsideration pursuant to CR 59 and submitted a new affidavit containing additional information. The court denied the motion for reconsideration, stating "[t]he new affidavit is an attempt to bring in new evidence[.]" The court further ruled that "the requirements of CR 59 have not been satisfied." Ms. Sangster appeals.

## ANALYSIS

■ Ms. Sangster contends that the trial court erred by granting Albertson's and Mr. Myers' motion for summary judgment dismissing her sexual harassment claim. When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Honey v. Davis*, 131 Wn.2d 212, 217, 930 P.2d 908, 937 P.2d 1052 (1997). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988). A material fact is one upon which the outcome of the litigation depends. *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 279, 937 P.2d 1082 (1997).

■ Summary judgment should rarely be granted in employment discrimination cases. *Johnson v. Department of Soc. & Health Servs.*, 80 Wn. App. 212, 226, 907 P.2d 1223 (1996). Yet, "[i]n order for a plaintiff alleging discrimination in the workplace to overcome a motion for summary judgment, the worker must do more than express an opinion or make conclusory statements." *Marquis v. City of Spokane*, 130 Wn.2d 97, 105, 922 P.2d 43 (1996). To defeat summary judgment, the employee must establish specific and material facts to support each element of her prima facie case. *Id.*; *Kahn v. Salerno*, 90 Wn. App. 110, 117, 951 P.2d 321, *review denied*, 136 Wn.2d 1016 (1998).

Washington's law against discrimination, RCW 49.60, protects employees from sexual harassment. *Coville v. Cobarc Servs., Inc.*, 73 Wn. App. 433, 438, 869 P.2d 1103 (1994) (citing *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 405, 693 P.2d 708 (1985)). The statute provides in relevant part, "[i]t is an unfair practice for any employer . . . [t]o discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability[.]'" RCW 49.60.180(3). Sexual harassment claims are characterized as either " 'quid pro quo harassment' " or " 'hostile work environment' " claims. *DeWater v. State*, 130 Wn.2d 128, 134, 921 P.2d 1059 (1996) (quoting *Payne v. Children's Home Soc'y of Wash., Inc.*, 77 Wn. App. 507, 511 n.2, 892 P.2d 1102 (1995)). The latter type of claim is at issue here.

■ To establish a prima facie case for a hostile work environment claim, the employee must demonstrate that there was (1) offensive, unwelcome contact that (2) occurred because of sex or gender, (3) affected the terms or conditions of employment, and (4) can be imputed to the employer. *Doe v. Department of Transp.*, 85 Wn. App. 143, 148, 931 P.2d 196 (1997) (citing *Glasgow*, 103 Wn.2d at 406-07); *Coville*, 73 Wn. App. at 438.

Ms. Sangster's harassment claim is based on several incidents and some ongoing behavior involving Mr. Myers. The parties agree that the conduct was offensive and unwelcome, fulfilling the first element of Ms. Sangster's prima facie case.

To prove Mr. Myers directed his conduct toward Ms. Sangster because of her gender, fulfilling the second element, she must prove that she would not have been singled out and caused to suffer the harassment had she been male. *Doe*, 85 Wn. App. at 148. To defeat a summary judgment motion, Ms. Sangster must produce competent evidence that supports a reasonable inference that her gender was the motivating factor for Mr. Myers' harassing conduct. *Id.* at 149.

Several of the incidents Ms. Sangster lists as sexually harassing do not fulfill this element because they were comments made to a group of both males and females and were not motivated by Ms. Sangster's sex. General comments Mr. Myers made at the managers' meetings like, "[t]ry it, it will make your pecker stand out," or commenting on how a female employee should be employee of the month because she looked good in a swimming suit were not directed at Ms. Sangster and were not motivated by her gender. Also, the comment, "[d]amn that makes my titties hard," was heard by several other people and was not specifically directed at Ms. Sangster.

The remaining incidents appear to have been motivated by Ms. Sangster's gender. Mr. Myers suggesting that Ms. Sangster order her shorts one size smaller, or try on a dress in front of him, implies that he wanted to look at her in tight shorts or undressed. Mr. Myers asking Ms. Sangster, "[w]hat's the matter—didn't you get any last night?" or remarking that she should join his mile high club, could have been made to either male or female, but were inappropriate comments about her sex life. Also, Mr. Myers' comments that Ms. Sangster should go for older men like himself and she could travel with him implied that he wanted to have a relationship with her. Mr. Myers' use of the terms, "honey," "sweety," and "little girl" in addressing Ms. Sangster and other female employees was definitely based on gender. The sexual nature of these incidents supports a reasonable inference that the conduct occurred because she was female.

■ The difficult question is whether these remaining incidents affected the terms and conditions of Ms. Sangster's employment, fulfilling the third element of her prima facie case. Our Supreme Court addressed this element in *Glasgow* stating: "Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law. The harassment must be sufficiently pervasive so as to alter the conditions of employment and

create an abusive working environment." *Glasgow*, 103 Wn.2d at 406.

Whether the harassment is such that it creates an abusive working environment may be determined by examining the totality of the circumstances. *Payne*, 77 Wn. App. at 515 (citing *Glasgow*, 103 Wn.2d at 406-07). We consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993). "Casual, isolated or trivial" incidents are not actionable. *Glasgow*, 103 Wn.2d at 406; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998) ("isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment' ").

Albertson's argues that the alleged sexual harassment was only part of Ms. Sangster's discontent with her job. Further, Albertson's minimized the sexual harassment, characterizing it as casual or trivial. Albertson's maintains that it is not clear that the harassment, without Ms. Sangster's other problems at the store, was sufficiently pervasive so as to alter the conditions of her employment and create an abusive working environment. However, the evidence is sufficient to create an issue of fact because reasonable persons could reach different conclusions as to whether the harassment altered the conditions of employment. Ms. Sangster has established the third element of her prima facie case.

As to the fourth element, Albertson's responsibility for Mr. Myers' conduct, Albertson's argues his conduct should not be automatically imputed to it. Ms. Sangster relies upon the holding in *Glasgow* that a coemployee's sexual harassment can be imputed to an employer if that coemployee is a manager who personally participates in the harassment. *Glasgow*, 103 Wn.2d at 407. Ms. Sangster em-

phasizes that Mr. Myers was the store director in charge of all the department managers including Ms. Sangster. He was her immediate supervisor. Under *Glasgow*, she argues Mr. Myers' conduct can be imputed to Albertson's.

In response, Albertson's argues *Glasgow* does not mean what it says. According to Albertson's, the term "manager" must be read in context. In *Glasgow*, the harassment is imputed where the harasser is "an owner, manager, partner or corporate officer." *Id.* By equating "manager" with "owner," "partner" or "corporate officer," Albertson's asserts *Glasgow* means a "manager" who shares a similar level of authority as the other entities. Although Albertson's concedes Mr. Myers was Ms. Sangster's supervisor, it disputes that his position was upper management.

The *Glasgow* formulation of the elements of sexual harassment is taken from federal cases interpreting Title VII. *Glasgow*, 103 Wn.2d at 406-07. Since *Glasgow* was decided, several federal cases have held that there should not be automatic imputation where the harasser is a supervisor at the employment site but does not occupy an upper level management position. *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010 (7th Cir. 1997); *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997); *Andrade v. Mayfair Management, Inc.*, 88 F.3d 258 (4th Cir. 1996). In response to those cases, the United States Supreme Court clarified federal law in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65, 118 S. Ct. 2257, 2270, 141 L. Ed. 2d 633 (1998) and *Faragher*, 524 U.S. at 807, 118 S. Ct. at 2292-93.

The court established a new test for determining whether an employer is vicariously liable for a hostile work environment created by a supervisor. It stated: "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington*, 524 U.S. at 745. To prevent this rule from imposing automatic liability and to encourage employers to adopt antiharassment policies, the court provided employers with an affirmative defense that they could as-

sert to avoid vicarious liability for their supervisor's misconduct:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ. Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. . . . No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.

*Burlington*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807-08, 118 S. Ct. at 2293. Thus, if the harassment is actionable and the harasser has supervisory authority over the victim, the presumption is that the employer is vicariously liable for the harassment. This presumption may be overcome only if the alleged harassment has not resulted in a tangible employment action, and then only if the employer can prove both elements of the affirmative defense.

Ms. Sangster's complaints about sexual harassment cover a period of time exceeding two and one-half years. During that time, Albertson's had in effect a policy prohibiting sexual harassment. This policy was stated in its employee handbook which Ms. Sangster was required periodically to read. It stated:

> Employees who have been led to believe that promotions, increases in wages, continued employment or any terms of employment are conditioned on sexual favors, or who feel that they have been subject to any type of sexually offensive work environment or incidents of retaliation, must immediately contact the hotline number 1-800-841-6371. You need not identify yourself to report improper activities via the hotline.

This policy was effectuated by the hotline number, periodic distribution of notices to each store employee, and special

training sessions for store directors. Ms. Sangster received a notice from Albertson's informing her that all employees must "comply with our policy prohibiting sexual harassment." The notice further instructed employees that if they were aware of supervisors or employees who have violated the policy, they "should immediately report such information to our General Office in Boise via our toll-free Hotline number."

Ms. Sangster never used the hotline to report the sexual harassment. She did not contact Albertson's about the sexual harassment until after she announced she was stepping down as the service deli manager at Clarkston. After she contacted Albertson's, she was interviewed by a member of its senior management. Thereafter, Albertson's investigated Ms. Sangster's claims. Although the investigation failed to substantiate her claims, Albertson's counseled Mr. Myers that no sexual harassment could be tolerated. There is no evidence that Ms. Sangster was subject to any sexual harassment or retaliation after she made her complaint.

In this case, there is evidence that the employer adopted a policy prohibiting sexual harassment. There is also evidence that the employee did not timely report the harassment to her employer as required by its policy. There is a factual basis for the argument that had she done so, the damages to her and the liability to her employer may have been eliminated or limited by its response to her complaints. Nevertheless, under a rule that imputes automatic liability to an employer for the conduct of a manager, Albertson's would be automatically liable for Mr. Myers' conduct.

Since *Glasgow* was decided, the law of sexual harassment has continued to develop and evolve. In adopting an affirmative defense limiting employer liability, the *Burlington* court stated it was consistent with "Title VII's purpose to the extent it would encourage the creation and use of anti-harassment policies and grievance procedures." *Burlington*, 524 U.S. at 745. *Glasgow* does not discuss the effect

of failure to use an anti-sexual-harassment-complaint procedure. There is no evidence that the *Glasgow* employer had such a procedure. Furthermore, in describing the four elements of sexual harassment, the court stated what "an employee must prove." *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406, 693 P.2d 708 (1985). It did not attempt to articulate defenses which may have been available to the employer. We conclude *Glasgow* is not controlling.

Viewed in the light most favorable to Ms. Sangster, as the nonmoving party, the evidence was sufficient to sustain a claim of sexual harassment under RCW 49.60.180. Albertson's and Mr. Myers should not have been granted summary judgment. There is a genuine issue of material fact as to whether Mr. Myers sexually harassed Ms. Sangster and whether such conduct created a hostile work environment. If these issues should be resolved against Albertson's, it would be liable for Mr. Myers' conduct, unless it prevails on the affirmative defense described in *Burlington* and *Faragher.*

In view of our decision, we do not address Ms. Sangster's assignment of error to the superior court order denying her motion for reconsideration. Additionally, Ms. Sangster asks us to rule as a matter of law that an individual such as Mr. Myers may be subject to employer liability under RCW 49.60. In Albertson's and Mr. Myers' motion for summary judgment, they asked the superior court to dismiss the claim against Mr. Myers individually because he was not an employer subject to liability under Washington's law against discrimination. The superior court did not decide this issue because it granted summary judgment on other grounds. In this appeal, Albertson's and Mr. Myers do not assign error to any decision of the superior court. The issue regarding whether Mr. Myers can be personally liable as an employer under RCW 49.60 is not properly before us.

Reverse and remand for trial.

SCHULTHEIS and KATO, JJ., concur.

Reconsideration denied February 25, 2000.