[No. 20902-4-III.   Division Three.   November 5, 2002.]

DARLENE ADAMS, *Appellant*, v. ABLE BUILDING SUPPLY, INC., ET AL., *Respondents*.

292

Peter D. Poulson (of *Lacy & Kane*), for appellant.

Warren E. Martin and Amanda M. O'Halloran (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, L.L.P.*), for respondents.

SWEENEY, J. — This wrongful termination claim requires a showing of, among other things, serious, offensive, unwelcome conduct directed toward women. And while this record suggests rude, boorish, and sometimes outrageously inappropriate conduct by a supervisor, it does not support a claim of discrimination based on sex. We, therefore, affirm the summary dismissal of Darlene Adams's complaint.

## FACTS

Tom Thomas is the manager of Able Building Supply's Ephrata store. Darlene Adams was a retail sales clerk. Ms. Adams presented evidence that Mr. Thomas was a rude, boorish, thoroughly obnoxious supervisor prone to outrageous temper tantrums. The following four displays of temper underlie the basis for Ms. Adams's claim.

1. Another employee filled Mr. Thomas's office with balloons on his birthday. Mr. Thomas became enraged and popped all the balloons with a pencil. Ms. Adams was not present during this outburst. She learned of it from another employee. Later in the day, Ms. Adams wished Mr. Thomas a happy birthday and remarked that the balloons had been a nice gesture. He replied, "I don't have time for this type of crap." Clerk's Papers (CP) at 42-43.

2. Ms. Adams and three male employees attended a meeting with Mr. Thomas. At the end of the meeting, Mr. Thomas looked at his watch, swore, slammed a pencil down on the desk, and stormed out of the room. The pencil bounced and flew past Ms. Adams's head. She conceded it was not deliberately aimed at her and that it did not strike her. The incident had nothing to do with her or anyone else personally. She agreed it was just the way Mr. Thomas was. CP at 47-49, 165.

3. Ms. Adams was helping another employee to troubleshoot her computer. Mr. Thomas became annoyed by their yelling back and forth across the store. He left his office angry and swearing. He roughly shouldered Ms. Adams away from the computer. She stumbled against a wall. A shouting match ensued. Ms. Adams ended up crying in the bathroom. Ms. Adams never saw Mr. Thomas push a male employee. CP at 50-55, 145-48.

4. Ms. Adams was having difficulty removing a sawhorse from its box. Mr. Thomas "went ballistic" because he preferred that merchandise be left in the boxes. CP at 44. He yanked the box out of her hand. While struggling to extricate the sawhorse from its box, Mr. Thomas aggravated a sore finger. This led to another public display of angry swearing. CP at 44-46, 165.

In addition, Ms. Adams often heard Mr. Thomas yelling at other employees, including most of the employees in the store. Sometimes Mr. Thomas's yelling could be heard throughout the store. Mr. Thomas also yelled at men. The tantrums were always over work-related issues.

After the shoving incident, Ms. Adams gave Mr. Thomas two weeks' notice of her resignation. She agreed to stay on a day-to-day basis if he would work on controlling his temper. Mr. Thomas refused. And Ms. Adams quit.

Ms. Adams filed an action against Mr. Thomas and Able for damages and attorney fees under RCW 49.60.030, Washington's Law Against Discrimination. She alleged that Mr. Thomas subjected her to a "demeaning, hostile, and

threatening pattern of behavior" that affected the terms and conditions of her employment. CP at 5. She alleged this behavior was gender discrimination that forced her to resign.

The employer, Able, moved for summary judgment. Able argued that, even granting the truth of all of Ms. Adams's complaints, she did not state a claim for gender discrimination because she had shown no more than that Mr. Thomas was unpleasant, unreasonable, and rude. Able contended Ms. Adams had failed to establish either (a) that the conduct was sufficiently severe or threatening to affect the terms and conditions of her employment, or (b) that the conduct was motivated by animus toward women.

Able produced declarations from five employees, four male and one female, who testified that Mr. Thomas yelled at men and women equally and only about job-related issues. Able also proffered Mr. Thomas's declaration in which he conceded that he yelled and swore at employees of both genders but denied ever making demeaning or gender specific derogatory comments.

The court granted summary judgment.

## DISCUSSION

*Standard of Review*. Ms. Adams is appealing a summary judgment. When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Honey v. Davis*, 131 Wn.2d 212, 217, 930 P.2d 908, 937 P.2d 1052 (1997); *Sangster v. Albertson's, Inc.*, 99 Wn. App. 156, 160, 991 P.2d 674 (2000). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hash v. Children's Orthopedic Hosp. & Med. Ctr.*, 110 Wn.2d 912, 915, 757 P.2d 507 (1988).

*Prima Facie Showing of Sex Discrimination*. Employers are prohibited from discriminating in "terms or conditions of employment" based on a person's sex. RCW 49-.60.180(3); *Payne v. Children's Home Soc'y of Wash., Inc.*,

77 Wn. App. 507, 510, 892 P.2d 1102 (1995). Harassment is actionable if a hostile work environment created by sexual harassment affects conditions of employment. RCW 49-.60.180(3); *Payne*, 77 Wn. App. at 511 (citing *Glasgow v. Ga.-Pac. Corp.*, 103 Wn.2d 401, 693 P.2d 708 (1985); *Coville v. Cobarc Servs., Inc.*, 73 Wn. App. 433, 869 P.2d 1103 (1994); *Thompson v. Berta Enters., Inc.*, 72 Wn. App. 531, 864 P.2d 983 (1994); *Delahunty v. Cahoon*, 66 Wn. App. 829, 835-36, 832 P.2d 1378 (1992); *Fisher v. Tacoma Sch. Dist. No. 10*, 53 Wn. App. 591, 769 P.2d 318 (1989); *Henderson v. Pennwalt Corp.*, 41 Wn. App. 547, 704 P.2d 1256 (1985)). The Law Against Discrimination is liberally construed to accomplish its purpose. RCW 49.60.020.

■ To establish the elements of an actionable hostile work environment, an employee must demonstrate (1) offensive and unwelcome conduct that (2) was serious enough to affect the terms or conditions of employment, (3) occurred because of sex, and (4) can be imputed to the employer. *Graves v. Dep't of Game*, 76 Wn. App. 705, 713, 887 P.2d 424 (1994); *Doe v. Dep't of Transp.*, 85 Wn. App. 143, 148, 931 P.2d 196 (1997).

■ Ms. Adams was then required to produce evidence sufficient to create a factual dispute over (1) whether Mr. Thomas created a hostile environment, and (2) whether his conduct discriminated on the basis of sex.

■ ■ *Severe and Pervasive.* Whether harassment is sufficiently severe or pervasive is a question of fact. *Harris v. Forklift Sys.*, 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993).

To constitute a hostile environment, the frequency and severity of the offensive conduct must be such as to affect the terms and conditions of employment. It is not sufficient that the conduct is merely offensive. *Washington v. Boeing Co.* 105 Wn. App. 1, 10, 19 P.3d 1041 (2000). To determine whether the conduct was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment, we look at the totality of the circumstances. In addition to its frequency and severity, we look at

whether the conduct involved words alone or also included physical intimidation or humiliation, and whether the conduct interfered with the employee's work performance. *Harris*, 510 U.S. at 21; *Glasgow*, 103 Wn.2d at 406-07; *MacDonald v. Korum Ford*, 80 Wn. App. 877, 885, 912 P.2d 1052 (1996).

But a civil rights code[1] is not a " 'general civility code.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)). The conduct must be so extreme as to amount to a change in the terms and conditions of employment. *Id*. The conduct must be both objectively abusive (reasonable person test) and subjectively perceived as abusive by the victim. *Harris*, 510 U.S. at 21-22.

Ms. Adams satisfied her burden of creating a factual issue as to whether the conduct here was severe and pervasive. Able's own witnesses testified that all employees had to endure Mr. Thomas's uncontrollable temper, random and unpredictable episodes of verbal abuse, and public humiliation. Whether the conduct constituted a sufficiently hostile environment to trigger the statute is then a disputed fact. It would be for a jury to decide whether Mr. Thomas's exhibitions merely reflected a gruff, direct management style—as characterized by Able—or were sufficiently severe and pervasive to alter the conditions of employment and create an abusive working environment.

For facts demonstrating a hostile environment to be material, however, the employee must also demonstrate that the conduct complained of was discriminatory on the basis of sex.

■ *Because of Sex*. To establish that offensive conduct constituted sex discrimination, Ms. Adams must show that the conduct was (a) directed at women and (b) motivated by animus against them as women. *Payne*, 77 Wn. App. at 513

---

[1] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

(citing federal cases). That Title VII (Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)) is not a "general civility code" applies with equal force to the discrimination element of a hostile environment. It is not sufficient to show that the employee suffered embarrassment, humiliation, or mental anguish arising from nondiscriminatory harassment. *Payne*, 77 Wn. App. at 514. The dispositive question is whether Ms. Adams would have been subjected to harassment if she had been a man. *Payne*, 77 Wn. App. at 514 (citing *Glasgow*, 103 Wn.2d at 406).

■ Ms. Adams admitted, and other employees also testified, that Mr. Thomas vented his rage randomly throughout the workplace, irrespective of the victim's sex.

■ *Disparate Treatment.* Here, there is only a single incident alleged which is arguably the result of animus toward women—the "shouldering" incident. This, first of all, was a single incident. But more importantly, Ms. Adams makes no showing that the conduct was based on animus toward women. Simply put, this is not enough to support a claim of pervasive conduct creating a hostile environment based on sex.

■ Moreover, the deposition testimony of Ms. Adams's primary witness, Barbara Kapalo, does not suggest that sexually discriminatory remarks made by Mr. Thomas occurred in the presence of Ms. Adams.

We conclude that Ms. Adams's hostile environment discrimination claim fails as a matter of law.

The summary dismissal is affirmed.

SCHULTHEIS and KURTZ, JJ., concur.