# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

FELICIA WILSON,

Appellant,

v.

TIMBERLAND REGIONAL LIBRARY,

Respondent.

No. 80630-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: January 13, 2020

LEACH, J. — Felicia Wilson appeals the summary judgment dismissal of her claims against Timberland Regional Library for hostile work environment, disparate treatment, wrongful discharge, and unlawful retaliation under the Washington Law Against Discrimination (WLAD).[1] Because Wilson fails to establish a prima facie case for any of her claims, the trial court did not err in dismissing the WLAD claims. We affirm.

## BACKGROUND:

Timberland hired Felicia Wilson, an African American woman, as the collection services manager in October 2011. Wilson makes a series of allegations about what happened during her tenure at Timberland. We consider

---

[1] Ch. 49.60 RCW.

the record in the light most favorable to the nonmoving party below[2] and describe the facts from this perspective.

In May 2012, the former human resources (HR) director expressed surprise that so little had changed in Wilson's department. So Wilson wrote a statement of accomplishments that she gave to the interim director, Gwen Culp.

In August 2012, Culp corrected Wilson's use of the word "ya'll" during a meeting.

Library director Cheryl Heywood often noticed Wilson at Brenda Lane's desk and heard comments that Wilson spent time talking to Lane. Heywood asked Jon Anson, the administrative assistant, to record the times Wilson would spend talking at his desk. Lane told him not to follow Heywood's instruction until Heywood had a chance to speak with Wilson about wasting time. So Anson did not make this record.

Heywood also asked Lane to document when Wilson was speaking at her desk, but Lane said she would not until Heywood spoke to Wilson first.

On July 8, 2015, Wilson applied for the deputy director position at the Pierce County Library System. She theorized that Heywood had undermined her application for employment by speaking negatively about her after she saw Heywood and the Pierce County Library director together.

---

[2] CR 56(c); see Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

-2-

On October 28, 2015, after Pierce County declined to hire her, Wilson complained to Walter Bracy, the HR director at Timberland, because she was upset about not getting the position. She told him she experienced disparate treatment and a hostile work environment. But Wilson told Bracy not to do anything about her complaints. The Pierce County Library director testified that they preferred a different candidate to Wilson and that is why she did not get the job.

On November 4, 2015, Wilson filed an Equal Employment Opportunity Commission (EEOC) complaint against Timberland and the Pierce County Library System, alleging discrimination based on race. The EEOC dismissed the claim.

On February 23, 2016, Wilson was not orally informed of a time change for a team meeting.

Heywood then chastised Wilson for sending an "inappropriate and unprofessional" e-mail to a coworker.

On January 24, 2017, Wilson left Timberland to take a job in Nashville.

Wilson sued Timberland on March 1, 2017. She asserted the following causes of action: (1) hostile work environment due to her race, (2) disparate treatment due to her race, (3) constructive discharge, and (4) unlawful retaliation. The trial court granted summary judgment to Timberland. Wilson appeals.

## STANDARD OF REVIEW

We review an order granting summary judgment de novo.[3] Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."[4] We view the evidence in the light most favorable to the nonmoving party.[5]

The WLAD prohibits employment discrimination based on race.[6] Courts liberally construe the WLAD "to accomplish its antidiscrimination purposes."[7]

Washington courts generally disfavor summary judgment in employment discrimination cases "because of the difficulty of proving a discriminatory motivation."[8] "To overcome summary judgment, a plaintiff needs to show only that a reasonable jury could find that the plaintiff's protected trait was a substantial factor motivating the employer's adverse actions. 'This is a burden of production, not persuasion, and may be proved through direct or circumstantial evidence.'"[9] If the plaintiff lacks direct evidence of discrimination, Washington courts turn to a burden-shifting analysis.[10]

---

[3] Loeffelholz v. Univ. of Wash., 175 Wn.2d 264, 271, 285 P.3d 854 (2012).

[4] CR 56(c); see Ranger Ins. Co., 164 Wn.2d at 552.

[5] Loeffelholz, 175 Wn.2d at 271.

[6] RCW 49.60.180.

[7] Blackburn v. Dep't of Soc. & Health Servs., 186 Wn.2d 250, 257, 375 P.3d 1076 (2016) (citing RCW 49.60.020).

[8] Scrivener v. Clark Coll., 181 Wn.2d 439, 445, 334 P.3d 541 (2014); see also Johnson v. Dep't of Soc. & Health Servs., 80 Wn. App. 212, 226, 907 P.2d 1223 (1996); Sangster v. Albertson's, Inc., 99 Wn. App. 156, 160, 991 P.2d 674 (2000).

[9] Scrivener, 181 Wn.2d at 445 (quoting Riehl v. Foodmaker, Inc., 152 Wn.2d 138, 149, 94 P.3d 930 (2004)).

[10] Scrivener, 181 Wn.2d at 445.

Under the burden-shifting analysis from McDonnell Douglas Corp. v. Green,[11] "a plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a presumption of discrimination."[12] The "prima facie burden is 'not onerous.'"[13] But the employee "must do more than express an opinion or make conclusory statements."[14] The employee must establish "specific and material facts to support each element of his or her prima facie case."[15]

If the plaintiff establishes a prima facie case, the burden shifts to the employer to prove a "legitimate, nondiscriminatory reason for the adverse employment action."[16] And if the employer meets this burden, the plaintiff can still defeat summary judgment by producing evidence that the employer's alleged nondiscriminatory reason was a pretext.[17]

## ANALYSIS

### Constructive Discharge Claim

Wilson claims that the record shows valid questions of fact about whether Timberland constructively terminated her.

---

[11] 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).
[12] Scrivener, 181 Wn.2d at 446 (citing Riehl, 152 Wn.2d at 149-50).
[13] Fulton v. Dep't of Soc. & Health Servs., 169 Wn. App. 137, 152, 279 P.3d 500 (2012) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)).
[14] Hiatt v. Walker Chevrolet Co., 120 Wn.2d 57, 66, 837 P.2d 618 (1992).
[15] Hiatt, 120 Wn.2d at 66 (emphasis omitted).
[16] Scrivener, 181 Wn.2d at 446.
[17] Scrivener, 181 Wn.2d at 446.

To show constructive discharge, Wilson must show (1) that a deliberate act made her working conditions so intolerable that a reasonable person would have felt compelled to resign and (2) that she actually resigned because of the conditions and not for some other reason.[18] A "resignation is presumed to be voluntary, and the employee must introduce evidence to rebut that presumption."[19]

Some of the events that Wilson describe include being corrected for her use of the word "ya'll," "being watched," believing that Heywood asked staff members to "spy" and report on Wilson, and that Heywood "sabotaged plaintiff's chances" for the Pierce County Library position. The evidence that Wilson points to shows, at most, minor work issues that are not unusual in a workplace setting. None of the admissible evidence shows work conditions so intolerable that no reasonable person could remain employed in her position.

Also, Wilson applied to nearly 51 positions since the end of 2012. Wilson's efforts to obtain alternative employment since the beginning of her time with Timberland undercut her claim that Timberland's actions over the course of her employment forced her to leave. So none of the admissible evidence shows that Timberland constructively discharged Wilson.

---

[18] Washington v. Boeing Co., 105 Wn. App. 1, 15, 19 P.3d 1041 (2000).
[19] Washington, 105 Wn. App. at 16.

Disparate Treatment and Retaliation

Wilson claims that she suffered disparate treatment and that Timberland retaliated against her after she filed a complaint with the EEOC.

Disparate treatment occurs when an "employer simply treats some people less favorably than others because of their race" or other protected category.[20]

To establish a prima facie disparate treatment case, Wilson must show that (1) she belongs to a protected class, (2) she was treated less favorably in the terms or conditions of employment, (3) a similarly situated employee outside of the protected class received the benefit, and (4) the employees were doing substantially the same work.[21]

The primary inquiry is whether the employee presented sufficient evidence to create an inference that the employer's decision was based on race.[22] A disparate treatment claim also requires "'an actual adverse employment action, such as a demotion or adverse transfer.'"[23]

To establish a prima facie case of retaliation, the plaintiff must show that (1) she engaged in statutorily protected activity, (2) an adverse action was taken, and (3) there was a causal link between her activity and the adverse employment

---

[20] Blackburn, 186 Wn.2d at 258.

[21] Crownover v. Dep't of Transp., 165 Wn. App. 131, 147, 265 P.3d 971 (2011).

[22] BARBARA T. LINDEMANN, PAUL GROSSMAN & C. GEOFFREY WEIRICH, EMPLOYMENT DISCRIMINATION LAW, at 2-24 to 2-25 (5th ed. 2012).

[23] Kirby v. City of Tacoma, 124 Wn. App. 454, 465, 98 P.3d 827 (2004) (quoting Robel v. Roundup Corp., 148 Wn.2d 35, 74 n.24, 59 P.3d 611 (2002) (Bridge, J., dissenting in part))).

action.[24] The threshold for proof of causation is low: the plaintiff need show only that her involvement in the statutorily protected activity was a "substantial factor" in the employer's decision to retaliate.[25]

Both the disparate treatment and retaliation claims require a showing of adverse employment action. An adverse employment action "must involve a change in employment conditions that is more than an 'inconvenience or alteration of job responsibilities.'"[26] An adverse employment action is generally limited to tangible employment actions that constitute a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[27]

Wilson claims that the evidence showing disparate treatment is that staff members were told to record Wilson's actions, a meeting time was changed without her knowledge, she was corrected for her use of the word "ya'll," she was "being watched all the time," and the library took staff resources away from her department.

---

[24] Estevez v. Faculty Club of Univ. of Wash., 129 Wn. App. 774, 797, 120 P.3d 579 (2005).

[25] Allison v. Hous. Auth. of City of Seattle, 118 Wn.2d 79, 95-96, 821 P.2d 34 (1991).

[26] Kirby, 124 Wn. App. at 465 (quoting DeGuiseppe v. Vill. of Bellwood, 68 F.3d 187, 192 (7th Cir. 1995) ); see also Alonso v. Qwest Commc'ns Co., 178 Wn. App. 734, 746, 315 P.3d 610 (2013) (an adverse employment action must involve "a change in employment conditions, such as "reducing an employee's workload and pay").

[27] Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

Wilson establishes the first element of the prima facie case for disparate treatment because she belongs to a protected group.[28] But her evidence does not support her assertion that Timberland treated her less favorably in her employment conditions or employment. So she fails to meet her burden on the second prong for disparate treatment.

Wilson also fails to meet her burden to establish any adverse employment action, as both disparate treatment and retaliation claims require. Timberland never fired Wilson, nor did it fail to promote her, reassign her to different responsibilities, or change her compensation or benefits. Because Wilson fails to identify any evidence in the record which shows she was treated less favorably than other employees or which shows an adverse employment action, Wilson fails to make a prima facie showing of disparate treatment or retaliation.

Hostile Work Environment Claim

Wilson claims that she suffered a hostile work environment.

To support a claim of a hostile work environment, Wilson was required to make a prima facie case that the actions (1) were unwelcome, (2) were because of her status as a member of a protected class, (3) affected the terms or conditions of her employment, and (4) could be imputed to her employer.[29] "Casual, isolated or trivial manifestations of a discriminatory environment do not

---

[28] Wilson is African American, and race is a protected group. RCW 49.60.030.

[29] Glasgow v. Georgia-Pac. Corp., 103 Wn.2d 401, 406-08, 693 P.2d 708 (1985).

affect the terms or conditions of employment to a sufficiently significant degree to violate the law."[30]

While Wilson may have experienced some typical workplace events that made her uncomfortable, none of the actions that took place could be described as anything more than trivial. And Washington law does not guarantee a stress-free workplace.[31] As discussed above, none of Wilson's evidence supports an assertion that Timberland's actions affected the terms or conditions of her employment. And she provided no evidence that connects Timberland's actions to her race. So she fails to show a prima facie showing of a hostile work environment.

## CONCLUSION

Because Wilson fails to establish a genuine issue of material fact with respect to each of her claims, we affirm the trial court's summary judgment dismissal of her causes of action.

_Leach, J._

WE CONCUR:

_Andrus, J._

---

[30] Glasgow, 103 Wn.2d at 406.
[31] Snyder v. Med. Serv. Corp. of E. Wash., 145 Wn.2d 233, 243, 35 P.3d 1158 (2001).